# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### HOME BENEFICIAL ASSOCIATION, A CORPORATION V. INEZ B. FIELD.

March 22, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Caskie, Frost & Coleman* and *Wyndham R. Meredith,* for the plaintiff in error.

*D. H. Kizer,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

On February 5, 1932, Howard D. Field applied for nine policies of weekly payment industrial insurance. His applications were approved and the policies applied for issued as of February 15, 1932. We are only concerned with one of them which was for $165, with provisions for double indemnity in case of accidental death. The insured died on July 22, 1932, from an accident suffered on the day before. His wife, as beneficiary, instituted this action and has recovered a judgment in the court below. The policy called for a weekly premium payment of 15 cents; premiums were collected by A. L. Garner, who was the agent through whom these policies were written.

The insurer, whose home office is in Richmond, Virginia, maintains a branch office in Lynchburg, the home of the insured.

In this policy are these conditions:

"Alterations and Waivers: This policy and the application for same, contain the entire contract between the association and the insured and the holder and owner hereof. The falsity of any statement in the application for this policy materially affecting the acceptance of the risk assumed hereunder, shall bar all right to recovery under this policy. The terms of the policy cannot be changed nor its conditions varied except by endorsement hereon signed by the president or secretary. Therefore, agents (which term includes also assistant superintendents and superintendents) are not authorized and have no power to make, alter or discharge contracts or to waive forfeitures, or to receive premiums on policies in arrears beyond the expiration of the grace period, or to receipt therefor in the receipt book belonging to this policy, and the payment to an agent of any such arrears shall be at the risk of the person paying same and shall not be credited upon the policy, whether entered in the receipt book or not.

"Grace Period: A grace period of four Mondays shall be granted for the payment of any premium, during which time the policy shall remain in force, subject to its terms, but after the expiration of the said period of grace, all liability of the association hereunder shall cease and all premiums paid hereon shall be forfeited to the association, except as to the nonforfeiture privileges hereinafter set out. If for any reason the agent shall not call for the premium when due, it shall be the duty of the policyholder to bring or send said premium to the office of the association or to the association's agent.

"Revival: Should this policy lapse for nonpayment of premiums, it may be revived upon application of the insured made within one year from the date to which premiums have been duly paid, and payment of all arrears, provided evidence of the insurability of the insured, satisfactory to the association, be furnished, but

such reinstatement shall not take effect unless the insured is alive and in sound health at the time of revival."

There is no conflict of evidence and there are no issues of fact. If the law is with the plaintiff she is entitled to recover. If it is not, she must fail.

It is to be observed that provision is made for a grace period of four Mondays. That is to say, the insured may be in default for four weeks in his premium payments and still recover for loss suffered in that time but not afterwards, and payments made thereafter to any agent are at the risk of the person paying. These provisions cannot be changed except by an endorsement written upon the policy and signed by the president or the secretary. The policy may, however, be reinstated within one year if the insured be in sound health and if all payments in arrears are met.

The contract premium was fifteen cents a week. It was not always paid promptly. On June 25, 1932, a payment was made which was a payment in full to June 6th. The premiums due on June 13th, 20th, 27th and on July 4th and on the 11th, five in number, were not met, and so the grace period passed. On July 15th, the insured paid to Garner sixty cents. This is his statement as to what occurred at that time:

" * * * he told Mr. Field that there would be six weeks of premiums on the Monday following which had not been paid; that Mr. Field paid him $1.20 covering two weeks' premiums, and he then told him that his insurance was out of benefit after four weeks, and Mr. Field stated he wanted to catch up and would do so next week; he then told Mr. Field that it would be all right when he caught up; that on this day five payments were past due and the sixth would have been due on the 18th; that he told him the insurance was out of benefit and he would have to catch up all the way before it could be back in benefit; that this was the last time he saw Mr. Field. * * * he did not tell Mr. Field that the policy had lapsed or that

he would have to sign an application for reinstatement, but told him it was out of benefit."

This payment was received in the Lynchburg office, credited in the usual way.

We may restate the situation. The payment made on June 25th was in full of dues to June 6th, and kept the policy alive until June 13th, but the premiums due on June 20th and 27th and on July 4th and 11th, had not been paid, and so the insurer was in default from June 13th to July 16th. If the two weeks' payment made on July 16th could have been credited to premiums in due course the policy would have continued in force until June 27th, and on July 22d, when the insured died, only those payments due on July 4th, 11th and 18th would have been overdue and death would have occurred within the grace period.

We accept, as we should accept, these claims made on behalf of the defendant company:

1. The conditions as to payments of premiums and to forfeiture plainly appear upon the face of the contract.

2. The company had power to limit the authority of its agents.

3. It did limit the powers of Garner to the soliciting of insurance and to the collection of premiums.

4. There was no custom or usage known to the insured which justified him in believing that contract provisions would not be insisted upon.

5. The policy was in arrears for more than four Mondays when the premium payments made on July 16th were received by Garner.

As indicating the position of the company we copy its assignment of error:

"Petitioner assigns as error the action of the court in failing to hold that the policy was lapsed and was forfeited and in entering up judgment as referred to above under the policy, with costs."

The policy declares that no agents have power to waive

forfeitures or to receive payments beyond the grace period, and that when the grace period is passed all liabilities cease and premiums paid are forfeited to the company.

██ From the evidence of Mr. Taylor, the local Lynchburg manager, it appears to have been the custom of his association to receive payments after the grace period had passed and to credit them when the policy was reinstated. But the policy could not be reinstated except within a year and upon proof of present good health. Nothing is said about their return in the event that it should be of opinion that the insured was at a later date a bad risk. In keeping them the company had everything to gain and nothing to lose. If Garner's powers were limited to collections, he had no right to impose conditions, and it is to be noted that with knowledge of the situation he actually went to the insured's home to collect premiums which he had no right to collect. There is nothing to show that he communicated to his company any statements made by him to the insured on July 16th. He simply turned over the money to the company, which Mr. Taylor said the company would not have received had it then known that Field was hurt, which is but another way of saying that it was the custom of the company to receive and hold these premiums on policies already forfeited because of nonpayments.

"In actions on insurance policies the insured should be protected by every proper presumption, for it is the policy of courts to uphold such contracts when it can be in good conscience done, and usually the intervention of death prevents any statement by the insured of his side of the controversy." *Flannagan* v. *Northwestern Mutual Life Ins. Co.*, 152 Va. 38, 146 S. E. 353, 363.

██ "It is a fundamental principle of law that forfeitures are not favored, and that courts are always on the alert to take advantage of any circumstances that indicate an election to waive a forfeiture, or any agreement to do

so on which a party has relied and acted." *Farmers', etc., Association* v. *Kinsey,* 101 Va. 236, 43 S. E. 338, 339.

This rule applies with added force to industrial insurance, for in its nature beneficiaries are often both helpless and ignorant. *Home Beneficial Association* v. *Clark,* 152 Va. 715, 148 S. E. 811.

 Here the company unconditionally accepted premiums on a policy already forfeited. We say "unconditionally" because Garner had no power to impose conditions and because it had no knowledge of any statements made by him at the time of the collection, nor did Field have any knowledge as to the custom of the company in such circumstances. The company had actual knowledge of the forfeiture of the policy. That fact was written into its own record.

"It follows that the only question upon the instructions of the court to the jury, which is open to the defendant on this bill of exceptions, is whether, if insurers accept payment of a premium after they know that there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach. Upon principle and authority, there can be no doubt that it is. To hold otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens." *Phoenix Mutual Life Ins. Co.* v. *Raddin,* 120 U. S. 183, 7 S. Ct. 500, 506, 30 L. Ed. 644; Rose's Notes, vol. 5, p. 273; note, 3 Am. St. Rep. 637.

"Where the company impliedly recognizes the continuing binding effect of a policy by acceptance or enforcement of payment of a premium it is precluded from thereafter asserting a breach or a ground for forfeiture of which, at the time, it has knowledge." 32 C. J., p. 1348. In support of the text a page of authorities is cited. See, also, *Monger* v. *Insurance Co.,* 96 Va. 442, 31 S. E.

609; *Easley* v. *Valley Mutual Life Ins. Ass'n,* 91 Va. 161, 21 S. E. 235.

The time for an insurance company to speak is when it accepts the premium, and not when it is called upon to pay, assuming of course that there is no fraud and that payment of the premium is made and accepted with full knowledge of the facts. *Harrison* v. *Prov. Relief Ass'n,* 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616.

It is perfectly true that these Virginia cases are not directly in point, but they serve to illustrate the general principle applied in this case. A company may waive forfeiture and does waive it when with full knowledge of all the facts it accepts overdue premiums, which, if properly applied, would reinstate the policy. We have seen that full knowledge was written in the company's own record.

If it be said that the premium was actually paid over to the company by its collector at a date too late to have been returned, the answer is that the evidence shows that the company had no purpose to return it but under a custom adopted would have kept it in any event had Field not been injured on the preceding day.

We are of opinion that forfeiture was waived and that the judgment of the trial court should be affirmed. It is so ordered.

*Affirmed.*