Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Millette, JJ., and Carrico, S.J.

SCHOOL BOARD OF THE CITY OF NEWPORT NEWS

v.  Record No. 090313          OPINION BY JUSTICE DONALD W. LEMONS
                                      February 25, 2010
COMMONWEALTH OF VIRGINIA

                FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                        H. Vincent Conway, Jr., Judge

     In this appeal, we consider whether the trial court erred
in holding that an insurance policy administered by the
Commonwealth did not cover a claim made by the School Board of
the City of Newport News ("the School Board").

                I.    FACTS AND PROCEEDINGS BELOW

     The Commonwealth, through its Division of Risk Management
("Risk Management"), established and administers an insurance
plan known as the Virginia Local Government Risk Management
Plan ("VaRISK 2" or "the Plan").  The School Board paid annual
premiums in return for its coverage under the Plan.  The
underlying claim in this case concerns a judgment obtained in
the United States District Court for the Eastern District of
Virginia ("District Court") by Stefan Jaynes ("Stefan") and
his family (collectively, "the Jaynes family") against the
School Board.   The School Board petitioned the trial court to
order the Commonwealth, through the Plan, to indemnify the
School Board for the judgment obtained by the Jaynes family in
the District Court, and to reimburse the School Board for the

attorney's fees incurred by the School Board in defense of the Jaynes family's action.

## A.  The Underlying Claim

The Jaynes family initiated their claim as a Special Education Due Process Hearing, alleging that Stefan, a student with a diagnosis of autism, was denied a free appropriate public education as required by the Individuals with Disabilities Education Act ("IDEA"), codified at 20 U.S.C. § 1400 et seq. (1994 & Supp. IV 1998).  At the conclusion of the Special Education Due Process Hearing, the local hearing officer found that the Newport News Public Schools "maintained a pattern and practice . . . of failing to follow the procedures set forth in" IDEA.[1]

The local hearing officer observed that Stefan "suffered a loss of an educational opportunity as a result of the procedural violations," and the Newport News Public Schools "seriously infringed upon [the Jaynes family's] participation in the [individualized education program] process."  The local hearing officer also found that the Jaynes family "incurred expenses for therapy and legal services related to [Stefan's] education from October 8, 1993 through August, 1998," and as a result "Stefan was damaged by the acts and omissions" of the staff of the Newport News Public Schools.  Accordingly, on

June 11, 1999, the local hearing officer held that the Jaynes family was entitled to "reimbursement for the costs, legal and educational, incurred in seeking to provide an education for their son, in the sum of $117,979.78."

The Newport News Public Schools appealed the local hearing officer's decision to a State Level Administrative Review, and on September 14, 1999, the appeal hearing officer issued his opinion.  Based on his review of the record, the appeal hearing officer upheld the award of educational costs to the Jaynes family, however he reduced the reimbursement sum to $56,090.84, finding that the statute of limitations operated to bar a portion of the expenses sought by the Jaynes family.  The appeal hearing officer's opinion provided, "[e]ither party is entitled to appeal this decision to either a state court of competent jurisdiction or a federal district court within one year of the date of this decision."

The Jaynes family then brought an action in the District Court against the School Board in December of 1999.  The School Board timely and properly notified Risk Management of the Jaynes family's claim.  The Jaynes family sought reinstatement of the local hearing officer's decision and award, which included "$117,979.89, plus interest, and . . . court costs, witness fees, expenditures and reasonable

---

[1] Appellant School Board is responsible for the

3

attorney's fees, pursuant to" IDEA, 20 U.S.C. § 1415. The Jaynes family then filed a motion for summary judgment, which the trial court granted in part pending resolution of the issue of damages. The District Court ordered the Jaynes family to submit a verified claim for damages if no stipulation to the amount of damages could be reached by the parties. Unable to stipulate to the amount of damages, the Jaynes family filed a claim for damages in the District Court, in which they sought $102,929.45, plus interest, from the School Board.

On November 17, 2000, the District Court issued its opinion and order on the Jaynes family's claim for damages. After its review of the record, the District Court found that the award by the local hearing officer "was adequately supported by the record and was not arbitrary," and it entered judgment in the amount of $102,929.45, plus interest at the judgment rate from September 14, 1999 and taxable costs, in favor of the Jaynes family.[2] Throughout its opinion, the District Court repeatedly referred to the "amount of damages" and the "issue of damages," while only once referring to the local hearing officer's finding that the Jaynes family was

---

supervision of the Newport News Public Schools.

[2] The District Court ordered that the taxable costs would be calculated following the Jaynes family's "timely submission of a bill of costs." Subsequently, the District Court determined that the bill of costs was untimely filed.

entitled to "reimbursement." The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed the District Court's decision in Jaynes v. Newport News Sch. Bd., 13 Fed. Appx. 166, 173 (4th Cir. 2001).

### B. The Present Litigation

In December of 2002, the School Board filed a petition in the Circuit Court of the City of Newport News against the Commonwealth alleging that the Commonwealth breached its contractual duty under the Plan to provide coverage for monetary liability arising out of the underlying litigation, and breached its contractual duty to defend the School Board against claims. The School Board sought indemnification in settlement of the judgment paid to the Jaynes family in March of 2002. The School Board alleged it paid the Jaynes family the sum of $102,929.45, interest thereon of $10,001.65, and "$29,325.50 in settlement of the [Jaynes family's] claim for attorney's fees." The School Board also sought the $49,229.07 it expended in defense of the underlying litigation. The School Board sought an aggregate amount of damages of $191,485.67.

> The Coverage section of the Plan states that the Plan
>
>> will pay all sums, except as herein limited, on behalf of the ENROLLED COVERED PARTY which the Enrolled Covered Party is legally obligated to pay on all claims, either first made or arising from any act occurring during the term of the coverage on causes of action established by law

5

by reason of liability arising out of acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization.

The Plan provided for a maximum compensation of one million dollars per claim, and defined a "[c]laim" as "any demand, suit or legal action." This definition of "claim" excluded "administrative hearings or procedures . . . regardless of whether or not monetary relief is sought." The Plan defined "[c]ompensation" to "include compensatory or punitive damages awarded by a court of competent jurisdiction."

The Plan also provided that it would pay, in addition to compensation for liability, "[a]ll expenses incurred by the [Plan], including defense costs." The Plan defined "[d]efense [c]osts" as,

> all fees and expenses relating to the adjustment, investigation, defense or litigation of a claim including attorney's fees incurred by the [Plan], court costs applicable to the defense and interest on judgments accruing after entry of judgment. Defense costs shall not include the office expense of the Covered Party nor the salaries of employees of any Covered Party.

The Plan contained a subsection entitled "DEFENSE," which read, "[o]n matters covered by this [Plan], VaRISK 2 shall have the right and duty to defend any suit against the Covered

6

Party, even if any allegations are groundless, false or fraudulent."

The Plan contained 14 exclusions, two of which are at the center of this litigation. Plan § IV.A. states that the Plan does not apply to:

> 1.   <u>Any obligation under</u> workers' compensation, unemployment compensation, disability benefits, <u>administrative hearings or procedures</u> or any similar law or proceeding.
>
> . . . .
>
> 10.  Claims, demands or other actions seeking relief or redress <u>in any form other than monetary damages</u>, including, but not limited to injunctive relief. For the purposes of this exclusion, a claim for attorney's fees, costs or expenses shall not be construed as a claim for monetary damages.

(Emphasis added.)

In May of 2008, the School Board submitted its brief in support of its claim for coverage under the Plan. The School Board argued that the amount paid to the Jaynes family is within the scope of the insuring agreement and is not otherwise excluded by the Plan.

The Commonwealth filed a response to the School Board's brief, in which it argued that the Plan did not indemnify the School Board for, nor did it impose a duty upon the Commonwealth to defend against, the Jaynes family's claim. The Commonwealth argued that the Plan excludes "'other than monetary damages' from its coverage" and "[r]eimbursement is

7

not damages under IDEA," rather it is a remedy.  The Commonwealth also argued that the action brought by the Jaynes family was "an administrative procedure throughout," and therefore not a claim covered by the Plan.  Finally, the Commonwealth argued that "because the [School] Board was never exposed to damages under IDEA, [the Commonwealth] had no duty to provide a defense to the" School Board.

In September of 2008, the School Board filed a motion to amend its petition to account for additional attorney's fees incurred by the School Board in defense of the Jaynes family's claim.  The School Board's amended petition now sought $53,295.54 for attorney's fees, raising the total ad damnum clause to $195,552.14.  On October 28, 2008, the trial court heard argument on the School Board's petition, and the School Board's motion to amend its petition to include the additional attorney's fees.

On November 6, 2008, the trial court issued an order granting the School Board's motion to amend the ad damnum to $195,552.14, and denying the School Board's petition for the trial court to find coverage under the Plan.  The trial court held that the Jaynes family's

> action giving rise to the Board's request for
> coverage is an administrative action for its
> entirety and, as such, was not a claim as defined
> by [the Plan]; that the underlying action was for
> "other than money damages" and, as such, fell

8

under an exclusion of the Plan; and that the Plan was not ambiguous.

The School Board timely filed its notice of appeal and we granted an appeal on the following assignments of error:

I. A. The court erred when it determined that the process in the United States District Court was simply an appeal of an administrative action rather than a civil action.

   B. The court erred in determining that the language of the insuring agreement was equivalent to that in a liability insurance policy and would not allow coverage for an award of damages based on reimbursement.

II. The court erred in not ordering that the defendant had a duty to defend under the policy.

## II. ANALYSIS

### A. Standard of Review

The issue in this case is whether the Jaynes family's claim against the School Board is covered by the Plan. "The interpretation of a contract presents a question of law subject to de novo review." PMA Capital Ins. Co. v. U.S. Airways, Inc., 271 Va. 352, 357-58, 626 S.E.2d 369, 372 (2006). Familiar principles guide this Court's interpretation of a contract.

> An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction. Additionally, in the absence of an ambiguity . . . we must interpret the contract by examining the language explicitly contained therein. [W]here an agreement is complete on its face, [and] is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.

9

*Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co.*, 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990) (internal citation and quotation marks omitted).

B.    The Nature of the Underlying Litigation

The trial court held that "the action giving rise to the [School] Board's request for coverage is an administrative action for its entirety and, as such, was not a claim as defined by the Risk Management Plan."  We disagree.

The question whether an action filed in state or federal court pursuant to IDEA, following exhaustion of state administrative procedures, remains an administrative action is a question of first impression for this Court.[3]  However, the Fourth Circuit has addressed this precise issue in *Kirkpatrick v. Lenoir County Board of Education*, 216 F.3d 380, 382 (4th Cir. 2000), in which it held, after detailed analysis, that an action brought in federal district court "by a party aggrieved by a state administrative agency decision . . . is an original civil action."

---

[3] We are aware of the decision of the Court of Appeals of Virginia in *Beasley v. School Bd. of Campbell County*, 6 Va. App. 206, 210, 367 S.E.2d 738, 740 (1988), *rev'd on other grounds by School Bd. of Campbell County v. Beasley*, 238 Va. 44, 380 S.E.2d 884 (1989).  To the extent *Beasley* suggests that an action brought pursuant to IDEA – or its state analogue, Code §§ 22.1-213 through 221 – in state or federal court remains an administrative action, it is expressly overruled.

10

In Kirkpatrick, the Fourth Circuit looked first to the language of the statute. Id. at 383-84. 20 U.S.C. § 1415(i)(2)(A) states that any party aggrieved by the findings and decision of the local or state administrative agency "shall have the right to bring a civil action with respect to the complaint presented . . . which action may be brought in any State court of competent jurisdiction or in a district court of the United States." Kirkpatrick, 216 F.3d at 384. The Fourth Circuit concluded that while "the statute explicitly affords an aggrieved party a right to appeal from the local educational agency to a state review officer . . . it explicitly gives an aggrieved party who has exhausted his administrative remedies the right to bring a civil action in federal or state court." Id. (citation and quotation marks omitted).

In Kirkpatrick, the Fourth Circuit also noted that 20 U.S.C. § 1415(i)(2)(B)(ii)[4] provides that the state or district court reviewing an action "shall hear additional evidence at the request of a party." Id. This procedure stands in contrast to a true appellate court, which is limited by the record developed below. Likewise, reviewing courts under IDEA "are not limited to the parameters of the remedies issued by the state administrative agency below." Id. Therefore,

rather than simply affirming, reversing, or vacating a decision of a state administrative agency, the reviewing court "offers its own independent de novo review and conclusion." Id. While the Fourth Circuit acknowledged that deference is given to the state administrative officer's findings of fact, that deference "is merely a recognition that state educational administrative agencies possess a level of expertise and familiarity with educational standards." Id. at 385.

Finally, the Fourth Circuit relied on principles of federalism in reaching its conclusion that a proceeding in state or federal court is not an administrative proceeding. In Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923), the United States Supreme Court established that "[l]ower federal courts lack jurisdiction to entertain appeals from state court judgments because that power is reserved exclusively to the United States Supreme Court." Kirkpatrick, 216 F.3d at 386.

Based on this analysis, we adopt the conclusion reached in Kirkpatrick. The plain language of IDEA labels the review of the administrative process a "civil action" and the substantive commands of IDEA further support that conclusion. As the court in Kirkpatrick concluded,

> while a federal district court may review a
> state review officer's decision and even defer
> to that decision, the federal district court

---

[4] This provision is currently set out in 20 U.S.C. § 1415(i)(2)(C)(ii)(2006 & Supp. II 2008).

12

does not sit as an appellate court. Federal district courts are courts of limited, original jurisdiction with no power to sit as appellate tribunals over state court or administrative proceedings. Federal district courts cannot directly supervise and supplant state administrative action by affirming, reversing, or modifying administrative decisions.

Id. at 387. Commencement of an action in a state court rather than in a federal district court does not change the nature of the process employed. In both state and federal court, an action filed pursuant to IDEA is an independent civil action, and not an administrative action.

Turning to the facts of this case, the Plan contains very broad coverage language that includes within its ambit "causes of action established by law by reason of liability arising out of acts or omissions of any nature." (Emphasis added.) The local hearing officer determined that "Stefan was damaged by the acts and omissions" of the staff of the Newport News Public Schools. The action brought by the Jaynes family in District Court was a "claim" as contemplated by the Plan because it was a "demand, suit or legal action" and, as discussed above, it was not an "administrative hearing[] or procedure[]." Therefore, under the plain language of the Plan, the action brought by the Jaynes family in District Court was a "claim" and not excluded on the grounds that it was an administrative action.

13

C.    The Plan's Exclusion of Non-Monetary Damages

The trial court held that the Jaynes family's claim was excluded by the Plan because "there's a difference between a monetary claim and reimbursement under IDEA" and under the Plan, reimbursement expenses are not covered.  The trial court noted that the City's failure to provide a free appropriate public education to Stefan Jaynes "should have been anticipated and should have been taken care of so that no administrative proceeding was necessary."  However correct that sentiment may be, our review is confined to the language of the Plan, and we hold that the trial court erred when it ruled that the relief sought by the Jaynes family was in a form "other than monetary damages" and therefore excluded by the Plan.

Under the Plan, "[c]ompensation shall include compensatory . . . damages awarded by a court of competent jurisdiction."  "Compensatory damages are those allowed as a recompense for loss or injury."  Virginia Highlands Airport Auth. v. Singleton Auto Parts, Inc., 277 Va. 158, 169, 670 S.E.2d 734, 740 (2009).  As a noun, "recompense" is defined as "an equivalent or a return for something done, suffered, or given:  a repayment made <as by way of satisfaction, restitution, retribution>:  compensation <offered in

14

[recompense] for his injuries>."  Webster's Third New International Dictionary 1897 (1993).

The District Court, in its "Opinion and Order on Plaintiffs' Claim for Damages," held that the Jaynes family "may only receive indemnification for educational expenses incurred after June 30, 1995," and granted judgment in their favor.  Based on the District Court's finding, the School Board violated IDEA by failing to provide a free appropriate public education to Stefan, and the Jaynes family sought "recompense for [the] loss or injury" Stefan suffered by the acts and omissions of the staff of the Newport News Public Schools.  See 277 Va. at 169, 670 S.E.2d at 740.

The Commonwealth argues that the "reimbursement the [School Board] was ordered to pay is 'other than monetary damages,'" and therefore the School Board's claim is excluded by the policy.  In support of its position, the Commonwealth cites the United States Supreme Court's decision in School Committee of Burlington v. Department of Education, 471 U.S. 359 (1985); the relevant passage relied upon reads, "the Town repeatedly characterizes reimbursement as 'damages,' but that simply is not the case.  Reimbursement merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it

15

developed a proper" individualized education program.  Id. at 370-71.

IDEA, in 20 U.S.C. § 1415(i)(2)(C)(iii), states that the reviewing court "shall grant such relief as the court determines is appropriate."  In Burlington, the United States Supreme Court granted certiorari to answer two questions related to what constitutes "appropriate relief" under IDEA: (i) "whether the potential relief available under [IDEA] includes reimbursement to parents for private school tuition and related expenses;" and (ii) "whether [IDEA] bars such reimbursement to parents who reject a proposed [individualized education program] and place a child in private school without the consent of local school authorities."  Id. at 367.

The United States Supreme Court stated in Burlington, "we are confident that by empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case."  Id. at 370.  The Court also noted that the "ordinary meaning of these words confers broad discretion on the court. The type of relief is not further specified, except that it must be 'appropriate.'  Absent other reference, the only possible interpretation is that the relief is to be 'appropriate' in light of the purpose of the Act."  Id. at 369.  Burlington did not hold, as a matter of law, that a

16

school board's payment of the educational expenses incurred by a family is the equitable remedy of reimbursement. Rather, it held that a trial court deciding a claim under IDEA is left with "broad discretion" in fashioning relief. Therefore, the dictum relied upon by the Commonwealth does not control contract interpretation under Virginia law.

In light of this analysis, we turn to the District Court's Opinion and Order. In its opinion, the District Court employed the word "reimbursement" only once to refer to the Jaynes family's claim for relief, instead choosing to refer to that claim as the "amount of damages" and the "issue of damages." For the purposes of interpreting this Virginia insurance contract according to its "ordinary and customary meaning," Graphic Arts Mut. Ins. Co., 240 Va. at 459, 397 S.E.2d at 876, we hold that the District Court's award of damages to the Jaynes family was an award of compensatory damages as defined by the Plan, and not an award in some "form other than monetary damages." Accordingly, the Jaynes family's claim was not excluded by the Plan.

D. The Commonwealth's Duty to Defend

The School Board assigns error to the trial court's failure to hold that under the Plan the Commonwealth had a duty to defend the School Board. The "obligation to defend is broader than [the] obligation to pay, and arises whenever the

17

complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 252 Va. 265, 268, 475 S.E.2d 264, 265 (1966).

> [I]f it is doubtful whether the case alleged is covered by the policy, the refusal of the insurer to defend is at its own risk. And, if it be shown subsequently upon development of the facts that the claim is covered by the policy, the insurer necessarily is liable for breach of its covenant to defend.

Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990) (citations omitted).

In its amended petition, the School Board asserted that "the Commonwealth . . . agrees to defend suits against the" School Board. The School Board further alleged that because of the Commonwealth's failure to "provide for the defense" of the Jaynes family's claim, "the School Board was forced to undertake a defense of the . . . litigation at its own expense," thereby incurring litigation costs of $53,295.54.

The trial court held that there was no coverage under the Plan; consequently, in its order on the School Board's petition, the trial court did not reach the question whether the Commonwealth breached its duty to defend. The School Board objected to the trial court's "overall finding that there was no breach of the policy contract pursuant to the Plan which would give rise to damages for the School Board['s]

18

attorneys fees incurred in defense of the underlying suit."
On brief to this Court, the School Board argued that "the duty
to defend and the damages sought would be subject to review at
retrial after remand."

On brief, the Commonwealth argues that it had "no duty
under the Plan to provide a defense to the [School] Board or
to reimburse it for defense costs" because the Jaynes family's
claim "was clearly not covered by the Plan."  The Commonwealth
does not argue that defense costs are excluded pursuant to the
Plan; rather, in support of its conclusion, the Commonwealth
relies on its earlier arguments that the underlying litigation
is excluded from coverage under the Plan.  However, we hold
that the Plan covers the Jaynes family's claim.  Because "the
claim is covered by the policy, the insurer necessarily is
liable for breach of its covenant to defend."  Brenner, 240
Va. at 189, 397 S.E.2d at 102.

The Plan contained the following provision:  "On matters
covered by this [Plan], VaRISK 2 shall have the right and duty
to defend any suit against the Covered Party, even if any
allegations are groundless, false or fraudulent."  In addition
to providing compensation for liability, the Plan covered
"[a]ll expenses incurred by the [Plan], including defense
costs."  The Plan defined "[d]efense [c]osts" as "all fees and
expenses relating to the adjustment, investigation, defense or

19

litigation of a claim including attorney's fees incurred by the [Plan], court costs applicable to the defense and interest on judgments accruing after entry of judgment."

Given the plain meaning of these contract provisions, the Commonwealth had the duty to defend the School Board, and bear the costs associated with that defense. Due to its failure to comply with the terms of the Plan, the Commonwealth is liable for the defense costs incurred by the School Board in defense of the Jaynes family's claim in District Court and on appeal to the Fourth Circuit, as well as the costs associated with this contract coverage litigation. Accordingly, the trial court erred in failing to hold that the Commonwealth breached its duty to defend, and in denying the School Board's claim for attorney's fees related to the defense of the lawsuit and the prosecution of this action to recover its damages.

## III. CONCLUSION

We hold that the trial court erred when it held that the Plan did not cover the claim submitted by the School Board. We further hold that the Commonwealth breached its contractual duty to defend under the Plan and is therefore liable for the litigation costs associated with the defense of the Jaynes family's claim in federal court, as well as the costs of prosecuting the contract claim in the Circuit Court of the City of Newport News, this present appeal, and on remand.

Accordingly, we will reverse the judgment of the trial court and remand with directions to enter judgment in favor of the School Board consistent with this opinion, and including the costs associated with the Commonwealth's breach of its duty to defend.

Reversed and remanded.