# CIRCUIT COURT OF THE CITY OF NORFOLK

Performance Grading
and Hauling, Inc.

v.

Progressive Classic
Insurance Co.

March 3, 2011

Case No. (Civil) CL09-6085

By Judge Charles E. Poston

This action was tried to the court on August 25, 2010, after which the Court took the matter under advisement pending receipt of written post-trial submissions of the parties. For the following reasons, the Court grants judgment to the Plaintiff and also awards the Plaintiff attorney's fees and costs.

*The Facts*

The Defendant, Progressive Classic Insurance Company, issued a policy for commercial vehicle insurance to Performance Grading and Hauling for the period of March 17, 2006, through March 17, 2007. On or around December 1, 2006, Betty Smith, principal officer for Performance, submitted a check in the amount of $3,071.01, for payment of the remainder of Performance's account balance. Performance had previously been late on monthly payments, and, on each such occasion, the late payment had been accepted and coverage had continued. Progressive processed Performance's check on December 19, 2006.

On February 23, 2007, one of Performance's automobiles was involved in a two-vehicle accident. The driver of the second vehicle was allegedly injured as a result of the accident. Geico Insurance Company, the injured driver's subrogee, made claims against Performance in excess of $15,000, as a result of the accident. On or about February 26, 2007, Performance submitted a claim to Progressive for coverage of liability resulting from this automobile accident, and, to date, Progressive has refused to honor the policy claim, asserting that the policy had been cancelled for non-payment before the accident date. The parties dispute the date on which the Progressive policy was cancelled.

Performance alleges that, on or around February 28, 2007, Progressive sent correspondence to Performance advising that Performance's policy had been cancelled on December 7, 2007. On March 13, 2007, Progressive issued a check in the amount of $3,020.00, representing a refund of premium payments. Performance has not yet cashed that check.

Progressive, on the other hand, argues that it mailed a policy cancellation notice to Performance at its address of record on November 21, 2006, advising Performance that, if payment were not made by December 7, 2006, Progressive would cancel the policy. Progressive further states that, having received no payment by that date, it cancelled the policy, effective December 7, 2006, and notified Performance of the cancellation by written notice on December 17, 2006, mailed to Performance's address of record.

## A. *Acceptance of December Payment*

Performance argues that Progressive waived any delinquency by Performance when it accepted Performance's December payment. Progressive's repeated acceptance of Performance's late payments caused Performance to believe that its policy coverage would continue as long as the monthly payments were made. Progressive, on the other hand, argues that it retained the right to cancel the policy as a result of a late payment, even though it had previously accepted late payments and continued coverage.

In support of its argument, Performance relies on the following passage from *Home Beneficial Ass'n v. Field*, 162 Va. 63, 69 (1934):

It follows that the only question upon the instructions of the court to the jury . . . is whether, if insurers accept payment of a premium after they know that there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach. Upon principle and authority, there can be no doubt that it is. To hold otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers,

> and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens.

*Id.* (citation omitted). The facts in *Home Beneficial,* however, are distinguishable from those in the action *sub judice* because there the company unconditionally accepted payment of the premiums on a policy it knew was already forfeited. *Id.*

In contrast, Progressive did not "unconditionally" accept Performance's premium payment in December 2006, nor did Progressive accept any subsequent premium payments. Performance's premium payment of $3,071.01 cleared Progressive's account on December 17, 2006, nearly two weeks after the alleged December 7, 2006, cancellation date. Progressive's cancellation notice, dated December 17, 2006, however, had indicated that, if Performance had paid by check, its refund would not be sent until after the payment cleared the bank. Progressive's records show that Progressive issued a "Draft Refund" in the amount of $3,020.00 on January 1, 2007, fifteen days after the premium payment cleared Progressive's account. Subsequent acceptance of a delinquent premium payment, alone, does not give rise to an estoppel argument when the premium is refunded within a reasonable time. The Supreme Court of Virginia has held that a refund issued twelve days after the premium payment had posted was reasonable. *Harris v. Criterion Ins. Co.,* 222 Va. 496, 503–04 (1981). Similarly, Progressive's issuance of the refund within fifteen days cannot be considered unreasonable. The Court, therefore, finds that the refund was issued to Performance in a timely manner consistent with the terms of its cancellation notice. The Court recognizes that Performance disputes this finding.

Progressive relies on *Harris v. Criterion Ins. Co.,* 222 Va. 496 (1981), in support of its argument that Progressive retained the right to cancel the policy if payment were not received by the date specified. In *Harris,* the Court held that estoppel bars an insurance company from denying coverage *only* when the insured party can prove that, as a result of his reasonable reliance on the insurer's conduct, he was misled by the insurance company's behavior into believing that the policy was still in force. Unjustified reliance will not invoke the bar of estoppel. *Id.* at 502. The plaintiff argued that, because of the insurance company's past conduct of accepting late payments and reinstating coverage, he believed his insurance was in effect after the date on which the company had warned it would cease coverage absent receipt of the payment due. *Id.* The Court, however, held that the plaintiff's reliance on the insurance company's past conduct was neither justified nor reasonable because the insurance company had dealt fairly and consistently with the plaintiff's delinquent

payments and had complied strictly with statutory and policy procedural aspects. Even though the plaintiff had made late payments on at least three occasions, all of which were accepted by the insurance company, the Court observed that the plaintiff had failed to recognize the insurance company's compliance with its standard operating procedure, and, consequently, the Court "perceive[d] nothing in the insurer's operating procedure that would justify Harris in believing that a delinquent payment, no matter how late it was made, would always be accepted by the insurer without interruption in coverage." *Id.* at 502–03.

In the instant case, prior to the policy cancellation, Performance had been late on at least four monthly payments. On each occasion the late payment was accepted, and coverage continued without interruption. Progressive sent Performance a cancellation notice on May 22, 2006, stating that the required premium had not been paid and the policy would be cancelled if the premium were not received or postmarked by June 7, 2006. Progressive sent a subsequent notice on June 4, 2006, stating that Performance's payment had been received, the policy had not been cancelled, and there had been no lapse in coverage. The following month, on June 26, 2006, Progressive again sent Performance a cancellation notice stating that Performance had paid less than the minimum amount due and that its policy would be cancelled if the required premium were not received or postmarked by July 12, 2006. The policy, however, was not cancelled, and on July 17, 2006, Progressive notified Performance that because Progressive had received Performance's payment, the policy had not been cancelled, and there had been no lapse in coverage. Although the July 17, 2006, date is *after* the July 12, 2006, deadline imposed by Progressive, the payment was postmarked on July 12, 2006.

Progressive sent another cancellation notice on August 21, 2006, indicating that Performance's policy would be cancelled if payment were not received or postmarked by September 6, 2006. On August 27, 2006, Progressive sent notice to Performance that Progressive had received payment, the policy had not been cancelled, and there would be no lapse in coverage. On September 21, 2006, Progressive sent another cancellation notice, advising that Performance's payment had not been received and its policy would be cancelled if the premium were not received or postmarked by October 7, 2006. Progressive followed up with notice to Performance on September 28, 2006, that Progressive had received payment, the policy had not been cancelled, and there would be no lapse in coverage.

Progressive sent yet another cancellation notice to Performance on November 21, 2006, indicating that it had not received payment from Performance and that, if payment were not received or postmarked by December 7, 2006, Performance's policy would be cancelled. This notice was in the same form and style as the earlier cancellation notices that Progressive had sent to Performance. On December 17, 2006, Progressive

sent notice to Performance that its policy had been cancelled on December 7, 2006. The notice also advised that Performance would receive a refund in the amount of $3,020.00, but that the refund would be sent after Performance's payment had cleared the bank. Performance's payment was postmarked on December 12, 2006, and Progressive posted that payment on December 17, 2006.

With respect to the four prior late payments made in June, July, August, and September, Performance's payment in each instance was postmarked *before* the date on which the notice warned that cancellation would occur. Each notice had indicated that the policy would be cancelled if payment were not "received or postmarked" by the date indicated. Thus, each of the four payments was made within the deadline specified by Progressive. Significantly, the payment made pursuant to the November cancellation notice was neither postmarked nor received until *after* the deadline stated in the November notice, December 7, 2006.

Estoppel applies to bar an insurance company from denying coverage only when the insured party can show that he justifiably and reasonably relied on the insurer's conduct and was, consequently, misled by the insurer's actions into believing the policy was still in force. Unwarranted reliance, though, will not invoke the doctrine of estoppel. *Harris v. Criterion Ins. Co.*, 222 Va. 496, 502 (1981). The *Harris* Court relied, in part, on the fact that the insurance company strictly complied with the language of each cancellation notice it sent by continuing coverage without interruption whenever a delinquent payment was made before the indicated cancellation date. *Id.* Likewise, Progressive's cancellation notices to Performance each indicated that continuous coverage would be maintained if payment were made before the cancellation date. Pursuant to this policy, because Performance tendered the delinquent June, July, August, and September premium payments *before* the cancellation date listed on each notice, Progressive continued Performance's coverage each time without interruption. The Court in *Harris* determined that nothing in the insurer's operating procedure justified the insured party's believing that the insurer would always accept a delinquent payment, no matter how late, without interruption in coverage. *Id.* at 503. Similarly, Progressive's continuation of Performance's policy upon receipt of payment by Performance *before* the cancellation date could not justifiably have led Performance to believe that Progressive would accept Performance's late payment at some point *after* the cancellation date. Thus, Progressive's actions, in accepting the late payments prior to the cancellation dates, did not reasonably and justifiably mislead Performance into relying on Progressive's late acceptance of Performance's payment. The Court, therefore, finds that Progressive is not estopped from denying coverage.

B. *Failure To Comply with Contract and Statutory Requirements*

Performance argues that Progressive failed to comply with the contract and statutory requirements for cancellation. The Supreme Court of Virginia has held that strict compliance with policy provisions and statutory requirements is required when an insurance company seeks to cancel policy coverage. *Gregory v. Providence Ins. Co.*, 214 Va. 134 (1973). The governing statute provides that written notice of cancellation mailed by an insurer to an insured party under the statute is effective if: (a) the insurer sends the notice by registered or certified mail, (b) the insurer, at the time of mailing, obtains a written receipt from the postal service showing the insured's name and address, as stated in the policy, or (c) the insurer, at the time of mailing, both (i) obtains a written receipt from the postal service showing the date of mailing and number of items sent and (ii) keeps a mailing list showing the name and address of the insured as stated in the policy, together with a signed statement by the insurer that the written receipt from the postal service corresponds to the mailing list retained by the insurer. Va. Code § 38.2-231(F)(1).

With respect to cancellation under § 38.2-231(F)(1)(a), defense witness Don Schofield, Commercial Lines Contact Center Supervisor for Progressive, admitted on cross-examination that Progressive did not send notices to Performance by registered or certified mail. Thus, Progressive did not effectively cancel Performance's policy pursuant to § 38.2-231(F)(1)(a).

Addressing proper cancellation under § 38.2-231(F)(1)(b), Progressive submitted a receipt from the United States Postal Service showing that an article was mailed to "Performance Grading & Hauling Inc, Chesapeake, VA 23323" on November 21, 2006. The November date is corroborated by evidence showing that Progressive sent notice to Performance on November 21, 2006, warning that, if Performance did not forward payment by December 7, 2006, Progressive would cancel its policy. The fact that the postal receipt does not list Performance's correct address as stated in the policy, and in particular, lacks its street address, is problematic under § 38.2-231(F)(1)(b) because this section provides that cancellation is effective when the postal receipt "show[s] the name and address of the insured stated in the policy." Because strict compliance with the statute is required, *see Gregory v. Providence Ins. Co.*, 214 Va. 134 (1973) (holding that the insurance company's failure to comply strictly with the statute resulted in its failure to establish effective cancellation), the inclusion of Performance's incomplete address in the postal notice is insufficient to establish proper notice of cancellation under § 38.2-231(F)(1)(b).

Cancellation under the provisions of Virginia Code § 38.2-231(F)(1)(c) requires two things. First, at the time of mailing, the insurer must obtain a written receipt from the post office showing the date of mailing

and the number of items mailed. Va. Code § 38.2-231(F)(1)(c)(i). In the action at bar, this requirement is met because the postal receipt offered by Progressive lists the date of mailing, *i.e.*, November 21, 2006, and shows the total number of items mailed, *i.e.*, four. Second, the insured party must, *at the time of mailing*, keep a mailing list showing the name and address of the insured, as stated in the policy, together with a signed statement by the insurer that the written postal receipt corresponds to the mailing list kept by the insurer. *Id.* § 38.2-231(F)(1)(c)(ii). Performance argues that the mailing list did not provide the proper address for Performance and that the required signed statement was not actually signed "at the time of mailing," as required under the statute. Because strict compliance with the statute is required, the inclusion of Performance's incomplete address is insufficient under the statute. No date accompanies the signature on the signed statement. A handwritten note at the bottom of the page lists a date of August 11, 2010. This notation does not appear to have been handwritten at the same time the page was signed. The Court, therefore, holds that, because Performance's address is incomplete on the postal receipt and the accompanying signed statement was not signed "[a]t the time of mailing," as required under the statute, Progressive's attempted cancellation failed under § 38.2-231(F)(1)(c).

Progressive argues that § 38.2-231 was designed to provide notice to an insured party that its insurance policy has been cancelled, and Progressive states that its "actions meet the intent of the statute." The Supreme Court of Virginia rejected this argument in *Commonwealth v. AMEC Civil, L.L.C.*, 280 Va. 396 (2010). The statute at issue in that case required written notification, and the Court held that strict compliance was required. Although the trial court had found that the Commonwealth had actual notice of the dispute, failure to provide written notice as required by the statute was fatal to the Plaintiff's claim. *Id.* at 405–06. In conclusion, because strict compliance with the statute is required, Progressive failed to cancel the policy in the manner prescribed by Virginia Code § 38.2-231(F) (1). *See Gregory v. Providence Ins. Co.*, 214 Va. 134 (1973).

## C. *Attorney's Fees*

Performance argues that it is entitled to recover attorney's fees from Progressive because the contract provided that Progressive would provide coverage on any covered claim. In general, absent a specific provision in the contract to the contrary, an award of attorney's fees is not recoverable by a prevailing litigant against a losing litigant. *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449 (1991). The Supreme Court of Virginia, however, has recently held that third-party defense costs are considered recoverable damages in a breach of contract action for failure to defend. *School Bd. of Newport News v. Commonwealth*, 279 Va. 460, 473 (2010). In that

case, the Court determined that the contract provisions imposed upon the Commonwealth a duty to defend the School Board, and that, as a result of its failure to comply with the contract, the Commonwealth was liable for the defense costs associated with the School Board's defense of a third-party claim. *Id.* at 474. It is clear that an insurer's obligation to defend its insured is broader than its obligation to pay. *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189 (1990). Because Progressive had a duty to defend Performance, Progressive is liable for the defense costs Performance incurred in its defense against Geico. The Court in *School Board* noted that these costs "include contract coverage litigation" and held that the trial court had erred in denying the School Board's claim for attorney's fees associated with its defense of the third-party suit. *School Bd.*, 279 Va. at 473–74. Thus, the Court finds that Performance is entitled to an award of attorney's fees associated with its defense. *See id.*

## Conclusion

For the reasons stated above, the Court finds that Progressive failed to comply strictly with the statutory provisions regarding cancellation of an insured's policy. As a result, the policy was not cancelled. The Court will grant judgment for the Plaintiff in the sum of $15,251.88 with interest thereon from March 1, 2011, with costs on its behalf expended. The Court will also award the Plaintiff attorney's fees to be paid by the Defendant in the sum of $13,416.50 with interest from March 1, 2011.