# Richmond

HERBERT L. CAIN v. M. L. REA, H. K. HAWTHORNE AND
R. M. ROBINSON, TRUSTEES, ET ALS.

November 17, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and
Browning, JJ.

The opinion states the case.

*Allen, Walsh & Waddell* and *T. Justin Moore*, for the appellant.

*Gilmer & Graves*, for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

This suit was instituted by Herbert L. Cain to enforce an alleged mechanic's lien duly filed on the property of the High Street Baptist Church of Charlottesville, for the balance of compensation claimed to be due for labor performed in connection with the erection of a church building. On January 1, 1926, the congregation of the church, in a meeting called in conformity with the rules of that religious denomination, decided to erect on a lot near the University of Virginia, a church for the accommodation of the Baptist

students attending that institution, and for the extension of its widening sphere of spiritual influence.

A subsequent meeting of the congregation was held on January 15, 1926, the minutes of which reveal:

"The recommendation of the new church committee and the action of the church on said recommendation January 1, 1926, was brought up, as some were opposed to the recommendation and action referred to a lengthy discussion followed.

"In view of the fact that the meeting had been duly announced from the pulpit on January 3rd and 10th, respectively, and the membership had been notified by canvassers, and the distribution of letters by a committee, a record crowd was present. Mr. W. H. Sadler moved that a vote be taken to confirm the action of the church on January 1, 1926. The motion was duly seconded. The vote was a rising one and the motion was carried by a vote of 179 to 29, a majority of 150."

The proof shows that Cain was present at the meeting and read to the congregation a tentative contract of employment as architect; that after some discussion it "was voted to go ahead with it," and that some days later the contract, with minor changes, was signed by Cain, H. K. Hawthorne, trustee, R. Merritt Robinson, trustee, and M. L. Rea, trustee. The proof is conclusive that Cain supplied the plans for the erection of the handsome building, the ultimate cost of which amounted to approximately $160,000, and that he fully carried out his part of the contract requiring him to supervise the construction thereof and to inspect the materials furnished by the contractor.

To the bill of complaint respondents filed a demurrer, relying on the following grounds:

"1. Breach, if any, of the contract between the trustees of the High Street Baptist Church of Charlottesville and the plaintiff, did not create a lien on the church property.

"2. The plaintiff has no valid lien on the church property sought to be subjected and sold in this proceeding.

"3. A mechanic's lien can not be asserted against church property because liens can be placed on church property only in accordance with the provisions of the statutes for such cases made and provided. The sections of the Virginia Code providing for mechanics' liens do not apply to church property.

"4. The plaintiff is not entitled to a prior lien on the property as alleged in the bill."

The demurrer was overruled and no further defense was interposed by the trustees. Thereupon, The Charlottesville Lumber Company, the general contractor for the erection of the church building, was by decree permitted to file its petition in the suit as a party defendant. The main allegations of the petition are, that petitioner is the named beneficiary in a deed of trust executed by the proper authorities of the church, with the approval of the court and duly recorded to secure petitioner in the sum of $97,672.06; that the deed of trust is paramount to the claim of complainant; and that the alleged mechanic's lien is null and void, for the reason that the statutes prescribing the methods under which a lien may be placed upon church property have not been complied with.

The cause was heard upon the bill of complaint, the petition of the lumber company and the depositions of witnesses, and on January 16, 1932, the chancellor decreed that complainant was not entitled to a mechanic's lien.

The main question to be decided is a pure question of law, viz: whether under the Virginia statutes a mechanic's lien, filed under the provisions of Code, section 6426, attaches to church property held by trustees.

Section 45 of the Code provides that whenever a congregation of a church, in conformity with the mode prescribed by its authorities, has given its assent for the sale or mortgage of its property, then any member of the congregation may institute a suit to carry into effect the will of the congregation, and if the court be of opinion that a proper case has been made, and that the rights of others will not

be violated, a decree may be entered directing such sale or mortgage.

Section 46 of the Code provides the method by which trustees may file a petition in the proper court, asking leave to sell, encumber or exchange church property.

Code, section 6426, so far as it is applicable to the question involved, reads thus: "All persons performing labor, or furnishing materials, of the value of ten dollars or more, for the construction, removal, repair, or improvement of any building or structure permanently annexed to the freehold, and all persons performing any labor or furnishing materials of like value for the construction of any railroad, shall have a lien, if perfected as hereinafter provided, upon such building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment thereof, and upon such railroad and franchises for the work done and materials furnished."

Although there is some conflict of authority, the rule to the effect that an architect is entitled to a lien under the general terms of a statute which gives a lien for work done and labor furnished, obtains in the majority of jurisdictions. See note in 60 A. L. R., page 1257.

The language of our statute is general in its terms, and, in our opinion, embraces all persons who perform "any labor." We are unable to draw the distinction between one who puts his labor into plans for the erection of a building and actually supervises its erection, and one who in the role of a bricklayer or carpenter actually performs a manual service. That an architect is embraced in the protecting provisions of the statute is in our opinion conclusive of his right to file a mechanic's lien on property not exempt by statute or public policy.

The sole reliance of appellees is on the provisions of sections 45 and 46 of the Code. The contention is made that the legislature has seen fit to provide only two methods by which church property may be encumbered. It is beyond controversy that the legislature has laid down the

rule that voluntary liens or encumbrances can be placed upon church property only by a strict compliance with the statutes; but, in our opinion, the sections referred to have no application to a lien which comes into being by operation of law. A mechanic's lien is a creature of statute and it attaches by operation of law when a contract has been entered into and the work is done, or materials furnished, which adds to the value of the property.

The doctrine laid down in Phillips on Mechanics' Liens (2d ed.), section 9, is as follows: "It is exclusively the creature of statute, deriving its existence only from positive enactment. There can be no lien independent of statute. It does not arise out of, nor is it the essence of, the contract for labor, nor dependent on the motives which suggest its being enforced. It is a mere incidental accompaniment as a means of enforcing payment, * * *."

The right to the lien is not dependent upon a breach of the contract with the lienor. The contract may provide that payment is not to be made until after the expiration of sixty days from the date of the contract. That fact would not defeat the application of the statute, for the reason that section 6427 of the Code accords to the laborer or materialman the right to file his line within sixty days from the time the labor is performed or the materials are furnished. Of course, it follows that if payment is made to the lienor in accordance with the terms of the contract, the owner is not liable for any resulting costs.

We are unwilling to concur in the contention that sections 45 and 46 prohibit a church congregation from making any contract which will affect the church property, except in the particulars enumerated in the statutes. The sections in question provide a convenient method for the sale or mortgaging of church property. They are barriers over which neither trustees nor individual members can step in order to destroy the *corpus*. They do not prohibit a church, in a congregational meeting, duly called in conformity with the rules of the church, from entering into

a contract with a laborer or materialman to perform labor or furnish material.

That a debt for improvements may be created by a contract entered into by the congregation of a church, is impliedly held in *Linn* v. *Carson,* 32 Gratt. (73 Va.) 170. In that case the facts are, that Carson, a church trustee, had advanced money for the erection of a church building. The book of discipline provided that if a trustee should advance money he should be reimbursed by funds derived from a mortgage placed on the property or a sale thereof. Carson filed his bill in equity to collect that amount due him, by sale of the church property. In affirming the decree of the lower court in favor of Carson, Judge Anderson said:

"The Methodist Episcopal Church at Winchester, though not a corporation, and incapable of incorporation under the Constitution of the State, was an association of individuals, recognized by the Constitution as a body capable of taking and holding land, under such limitations as might be prescribed by law, and entitled to be secured in the enjoyment of its property.

"By the law, it is authorized to have a board of trustees, who may sue and be sued, in whom the title to its land or other property may be vested. But it is limited in the right of holding land only as a place of public worship, or as a burial place, or a residence for a minister or bishop, or other minister or clergyman, who, though not in special charge of a congregation, is yet an officer of such church or religious society, and employed under its authority and about its business. And it is added, 'the land shall be held for such use or benefit, and for such purpose, and not otherwise.' That would restrict it to the sacred and religious purposes mentioned, and not for merchandising, manufacturing or other secular uses. But it is not a restriction on the mortgaging or sale of the land for debt. To sell the land would not be to *hold* it for other purposes; and it might be held for the sacred purposes mentioned, whilst at the same time it was encumbered by mortgage or otherwise for

454

debt contracted in its acquisition. The title is authorized to be vested in the trustees of the church or religious society; but they are restricted as to the quantity of land they may take and hold 'at any one time.' These words— *at any one time*—seem to imply that they may alienate the lands they hold at one time, and then buy other lands, so that they do not, at any time, exceed the limitation. There is certainly nothing in these provisions of the statute which restricts or inhibits the alienation. There are limitations upon the acquisition of lands, but none, it seems, upon the alienation of any they have acquired. And the thirteenth section of this seventy-sixth chapter expressly authorizes the circuit court of the county wherein the lands lie, upon the application of *any* member of the congregation, in a proper case, to decree the sale. The authority given in that particular case does not exclude the authority of a court of equity in other cases in the exercise of its general jurisdiction to decree a sale. It may be regarded rather as predicated of the amenability of church property to the general jurisdiction of courts of equity, just as the property of other individuals or association of individuals is, and that this section was designed only to give the jurisdiction upon the application of any member of a religious society to effect a sale for the benefit of the society, and for direction to the court in the disposition of the proceeds of the sale.

"The Methodist Episcopal Church at Winchester, an association of individuals, had adopted the book of discipline of the Methodist Episcopal Church as the law of their society. In chapter 3, section 2 of said book of discipline, page 264, it is provided that if the trustees, or any of them, have advanced money, or are, or shall be, responsible for any sum or sums of money on account of the said premises (that is, for houses of worship or dwellings for the preachers) which they are obliged to pay, they are authorized to raise the said sum or sums of money by a mortgage or sale of the premises. The decree in favor of Joseph S. Carson

is for advances and liabilities incurred in the erection of a house of worship for the society upon a lot which the trustees had purchased for that purpose. These advances were made and liabilities incurred for the benefit of the society, and with their approval. And it must be considered that they were made and incurred upon the faith of the assurance contained in the book of discipline just referred to, which he relied on for his security. It was in fact a contract between him and that society that if he would advance the money he advanced, and assume the responsibilities he did, to raise the money to complete the church building, so as to provide for them a place of worship, the property should be mortgaged or sold, if necessary, to reimburse and indemnify him."

In *Trustees of Franklin St. Church* v. *Davis*, 85 Va. 193, 7 S. E. 245, 247, it appears that the complainant instituted a suit to enforce a mechanic's lien on a church building. There was a decree in the lower court in favor of Davis, which upon appeal to the appellate court was reversed on the sole ground that the mechanic's lien was not perfected in time. There seems to have been in the mind of the court no doubt as to the right of the complainant to file a mechanic's lien on the church property, based upon his contract with the trustees for the performance of labor. In the course of the opinion, Judge Lewis uses this language:

"It was competent for the parties to agree that the work should be considered as completed before what may be called the finishing touches were actually put upon it; and in view of the agreement between them, of which the collection of the second payment and the charge and receipt of interest just mentioned is evidence, the complainant was undoubtedly entitled to file his mechanic's lien in the office on the said first day of November, or at any time within ninety days thereafter, although the lien, if it had been then perfected, would have been subject to any proper deduction on account of the penciling, etc., which was not done until in August, 1885. The result is that the complainant, by unduly delay-

ing to perfect his lien, has lost it, and for this result there is no one but himself to blame." See also *Clark* v. *Oliver*, 91 Va. 421, 22 S. E. 175.

There is no reason arising out of the nature of church property in general for excepting it from the general terms of section 6426. That a church is embraced in the language, "any building," is not open to doubt.

In Boisot on Mechanics' Liens, section 179, we read: "It has been held that churches and railroad depots are buildings on which mechanics' liens would lie."

To the same effect is the rule in Phillips on Mechanics' Liens (2d ed.), section 171:

"171. Instances of Structures Considered as Buildings. —A church is a 'building' within the mechanics' lien law. All churches, it was said, are spoken of in common parlance as buildings; and as corporations, clerical as well as lay, ought to pay what they owe, there is no reason to suppose payment should not be enforced by this lien, which is as convenient as any other. Particularly where the congregation is not incorporated, this is the most facile way of making the property of the joint stock liable. There is no reason, either religious, moral, or civil, why the mechanic's lien does not apply to the erection of a church."

In 20 Am. & Eng. Enc. of Law (2d ed.), page 289, the rule is stated thus: "A church is subject to a mechanic's lien under a statute giving such lien on buildings, unless churches are expressly excluded from the operation of such statute, or are by other statutes exempt from seizure and sale under execution." See, also, *Rabb* v. *Ellison*, 89 N. J. Law, 416, 99 Atl. 119; *Presbyterian Church* v. *Allison*, 10 Pa. St. 413.

Counsel for appellees rely upon certain Virginia cases in support of their construction of the Virginia statutes. We are of opinion that the cases relied on are not in point, but inasmuch as the language employed in the opinions may be the subject of debate, we deem it necessary to distinguish those cases from the case at bar.

The facts in *Globe Furniture Co.* v. *Jerusalem Church,* 103 Va. 559, 49 S. E. 657, 658, are as follows: Two of the trustees of the church bought on credit certain pews and church furniture which were placed in the church. The debt was not paid and an action at law was brought against the trustees for the purchase price, and judgment taken by default. A suit was then instituted to enforce the judgment as a lien upon the real estate of the church. A demurrer denying the validity of the lien was sustained, and the bill was dismissed. On appeal, the decree was affirmed. It does not appear from the opinion that any action was taken by the congregation authorizing the trustees to contract the debt. The following quotation from the opinion clearly sets forth the basis of the decision:

"It is clear from the statute law to which we have adverted that the trustees of a church merely hold the legal title to the real estate conveyed, devised, or dedicated for the use and benefit of the religious congregation, at whose instance they have been appointed, and have no power of their own volition, and in their capacity as trustees, to either alien or encumber such real estate.

"The judgment asserted is valid as to the individuals against whom it was obtained, but it has no validity as a lien upon the real estate of the appellees. If the church property could be encumbered by this method, the statutes mentioned would be useless, and it would be in the power of church trustees, appointed merely to hold the legal title, to sweep away their house of worship, without the authority or even knowledge of the religious congregation that had acquired it."

The case merely holds that the trustees "have no power of their own volition, and in their capacity as trustees, to either alien or encumber such real estate." There is no suggestion in the opinion that if the congregation had authorized the contract in a meeting called in conformity with the rules of the church, it could not have been enforced.

The next case relied on is *Building Supplies Corporation* v. *Jeffress,* 140 Va. 592, 125 S. E. 704. It appears that an action at law was brought against the trustees, and the facts are thus stated in the syllabus:

"The trustees of a church entered into a contract for remodeling the church building and building an annex thereto. Under this contract certain payments were to be made as certain parts of the work were completed. After the contract was made the contractor drew an order on the board of trustees for building supplies, which was accepted by one of the trustees in the following form, 'accepted, Weldon Edwards.' Subsequent to this order an agreement was entered into between the trustees and the contractor under which Edwards was to see that bills for material and labor were first paid out of the respective payments due and payable in accordance with the contract, and then pay over to the contractor the balance of such payment due and payable. It appeared that the total contract price had been paid by the trustees through Edwards before they knew of this acceptance."

The court held that neither the two trustees personally nor in their representative capacity, nor the church, was liable. In support of the holding of the court this language is used: "Again, it nowhere appears that these trustees were authorized by the congregation to incur any liabilities at all save those noted in the contract of October 21st. As a matter of fact it does not appear that this contract was executed under proper authority, but its binding effect is not contested. If these trustees were not authorized in the specific manner provided for by statute to incur this indebtedness, then no act of theirs could bind the church."

While the court does state that, "If these trustees were not authorized in the specific manner provided for by statute to incur this indebtedness, then no act of theirs could bind the church," the clear implication to be drawn from the preceding language of the paragraph is that if the

indebtedness was authorized by the congregation, it would be binding.

Much of the confusion, we think, arises from the failure to draw the distinction between the terms "mortgage," "deed of trust" and "encumbrance," employed in sections 45 and 46 of the Code, and the term "debt" as it is commonly used.

■■ The statutes inhibit the placing of certain voluntary liens on church property unless the specific requirements of the statute are met. There is no inhibition in the statutes against a congregation contracting a debt for the improvement of property, provided it is done in conformity with the rules of the church. A debt is in no sense a lien upon the property of the debtor, until reduced to judgment or secured by a deed of trust or mortgage upon the property.

The next case relied on by appellees is *Forsberg* v. *Zehm*, 150 Va. 756, 143 S. E. 284, 287, 61 A. L. R. 232, decided by the Special Court of Appeals. An action at law for wrongful discharge was brought by Zehm, an organist, against the board of stewards of the Ghent Methodist Episcopal Church, South. There was a verdict for the plaintiff. The specific language relied upon is as follows: "There must be competent parties to a contract. However it may be in other States, in Virginia a church or its congregation cannot contract, certainly not unless perhaps by reason of a specially held meeting and through a special committee appointed by the members attending such meeting."

In our opinion the above statement was not necessary to a decision of the case, and therefore it has no binding effect. In so far as the language impliedly conflicts with the views expressed in this opinion it is disapproved.

In concluding this phase of the case, our opinion is that the appellant entered into a valid contract of employment with the congregation of the church, and that under the provisions of section 6426 of the Code he is entitled to file a mechanic's lien upon the church property.

However, it is contended by appellees that even though appellant is entitled to a lien, he is estopped from asserting it against appellees. The grounds relied on to effectuate an estoppel are that appellant approved the contract under which appellees built the church; that appellant approved a loan made by the Southern Bond and Mortgage Company on the church property which enured to the benefit of appellees; that appellant was cognizant of the execution of the deeds of trust to secure the claim of the appellee contractor, in accordance with the contract of employment.

The principles of law governing estoppel have been repeatedly stated in the decisions of this court.

In *C. & O. Ry. Co.* v. *Walker,* 100 Va. 69, 40 S. E. 633, 641, 914, it is said: "In order to constitute an estoppel: '1. There must have been a representation or concealment of material facts. 2. The representation or concealment must have been with knowledge of the true state of facts, unless the party making it was bound to know the facts, or his ignorance of them was due to gross negligence. 3. The party to whom it was made must have been ignorant of the truth of the matter as to which representation was made. 4. It must have been made with the intention that the other party should act on it; but the place of intent will be supplied by gross and culpable negligence on the party sought to be estopped, if the effect of that negligence is to work a fraud on the party setting up the estoppel. 5. The representation or concealment must be proved to have been the inducement to the action of the other party. 6. The party claiming the estoppel must have been misled to his injury.' 4 Am. & Eng. Dec. Equity, page 268."

A careful examination of the record fails to reveal any basis for the application of the doctrine of estoppel in this case. The parties dealt at arm's length. It was a part of appellant's duty as an architect to protect the duly constituted committee of the church in the making of the contract. There was no promise upon the part of appellant,

either express or implied, that he would not assert his legal rights. No request was made of appellant that he waive his right to file a mechanic's lien. Appellees knew, or should have known, that under the provisions of section 6436 of the Code a mechanic's lien is paramount to all other liens. It is not suggested that appellant was guilty of actual fraud in inducing the contractor to enter into the contract with the church. While it may work a hardship on the contractor to subordinate its deed of trust to the claim of appellant, perfected by the filing of the mechanic's lien, there is no reason suggested in the record why this should not be done.

Upon the whole case, we are of opinion that the decree of the trial court is erroneous and must be reversed. We are further of opinion that the mechanic's lien filed by the appellant is a valid and subsistent lien upon the building known as the High Street Baptist Church of Charlottesville, Virginia; that in the event appellant's claim, amounting to the principal sum of $3,932.08, with interest on $2,432.08, a part thereof, from August 28, 1929, and interest on $1,500, a part thereof, from December 30, 1928, is not paid, then said building should be rented or sold as provided by law, in order to discharge said indebtedness.

The decree must, therefore, be reversed and the cause remanded to be further proceeded in in accordance with the views herein expressed.

*Reversed.*