J. B. COWLES, Jr., Administrator of the Estate of Hilda A. Nightengale, deceased, Appellant,

v.

OHIO FARMERS INSURANCE COMPANY

and

Ohio Farmers Indemnity Company, Appellees.

No. 7299.

United States Court of Appeals Fourth Circuit.

Argued Jan. 9, 1957.

Decided March 11, 1957.

---

J. B. Cowles, Jr., and Russell M. Carneal, Williamsburg, Va., for appellant.

Herbert V. Kelly, Newport News, Va. (Jones, Blechman, Woltz & Kelly, Newport News, Va., on brief), for appellees.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and WARLICK, District Judge.

SOBELOFF, Circuit Judge.

The object of this appeal is to set aside the judgment entered upon a verdict directed by the District Court in favor of the defendant after the jury to which the case had been submitted failed to agree.

The plaintiff is J. B. Cowles, Jr., suing as Administrator of the Estate of Hilda A. Nightengale. She met her death when the automobile in which she was a passenger was in a collision with a vehicle operated by Archie McClinton. In a suit brought by the Administrator against McClinton, judgment for $9,000.00 was recovered, but returned by the sheriff "no effects found." The Administrator then sued the present defendant Ohio Farmers Indemnity Company, on the theory that it was McClinton's insurer. Whether or not it was his insurer is the issue which the Court submitted to the jury under instructions not here complained of. Action was reserved by the Judge upon the defendant's timely motion for a directed verdict, offered at the close of the plaintiff's case and repeated at the conclusion of all the evidence. After the jury disagreed and was discharged, the Court, upon further consideration, granted the defendant's motion.

In May, 1953, the defendant insurance company wrote a liability policy on a 1949 Pontiac automobile owned by Melvin Ruth, McClinton's father-in-law, and upon its expiration in May, 1954, the policy was renewed. The following September, the assured, Ruth, traded in his 1949 Pontiac and purchased in its stead a 1953 model of the same make, causing it to be titled in the name of his daughter Mary and her husband, Archie McClinton. McClinton went to the defendant's agent to have the insurance

transferred to the new car and to himself and his wife as the new owners. He testified that he handed the insurance agent the temporary registration card for the newly purchased car, and the insurance policy. The registration card showed on its face that the owners were Mary and Archie McClinton, not Melvin Ruth.

Although the card in the agent's hands disclosed who the owners were, the agent issued an endorsement effecting a change in the car insured, but not in the names of the assured, and mailed it to Ruth. Upon receiving the endorsement, Ruth noticed that it showed him, and not the McClintons, as the owners. He thereupon went to the agency, as McClinton had done, to obtain a correct endorsement. The agent dismissed him peremptorily ("brushed me off," he testified), saying that all that needed to be done was to attach the endorsement to the policy. The agent's statement, alleged to have been made hastily and impatiently, and perhaps without full appreciation of the situation, could nevertheless be said to amount to assurance to Ruth that the new car and its owners were properly protected. According to the plaintiff's version, Ruth, relying on the agent's statement, left the office and attached the endorsement to the policy as directed. Neither he nor the McClintons took any further action in respect to the policy.

The person with whom Ruth spoke at the insurance agency office did not deny Ruth's account of the incident but testified that he did not remember anything about it. It is hardly to be doubted, however, that the information as to the new automobile's engine number, which is contained in the endorsement, must have come to the attention of the agency from the registration card put into its representative's hands by McClinton, and that this card also showed the car's ownership in the McClintons.

The policy embodied the usual provision that despite notice to or knowledge of any agent of the company of material facts, the terms of the policy should not be waived or changed except by endorse-ment issued to form a part of the policy; and it was further provided in the policy that no assignment of an interest under it should bind the company until its consent was endorsed thereon.

In Virginia, as elsewhere, a provision against waiver may itself be waived by the insurer or its lawful agent. Virginia Auto. Mutual Insurance Co. v. Brillhart, 187 Va. 336, 46 S.E.2d 377, 380, 381.

Familiar principles of estoppel may also apply here. When one uses language with reason to believe that it will have a particular meaning to the mind of the listener and may influence his conduct to his detriment, he will not be heard later to say that the situation is not as he led the other to believe. This is true not only when the words are spoken with intent to deceive but also when spoken recklessly with apparent knowledge, but without fully informing oneself. See Cain v. Rea, 159 Va. 446, 166 S.E. 478, 483, 85 A.L.R. 945; 19 Am.Jur., Estoppel, Sec. 66.

The burden of showing waiver or estoppel is upon the person alleging it. Here the plaintiff's burden is to establish by a preponderance of the evidence to the satisfaction of the jury that the conversations of McClinton and Ruth, plus handing the registration card to the agent, did, under the circumstances, amount to a request for a change in the name of the assured as well as the automobile covered. And the further burden rests upon the plaintiff to satisfy the jury that what the agent told Ruth reasonably justified him and the McClintons in thinking that the new owners were covered. As the evidence on the plaintiff's behalf was sufficient to raise such inferences, the issues were for a jury to determine.

These issues are mixed questions of law and fact which the District Judge properly submitted to the jury as follows:

"Under the terms of the policy the protection afforded was entirely

dependent upon ownership of the automobile by the named insured, unless this requirement was waived by the company or its agent. The mere existence of a policy in the name of Melvin Ruth does not entitle the plaintiff to a verdict. And as I indicated to you previously, the only way in which a verdict can be returned for the plaintiff is to believe that Archie McClinton informed Thomas J. Crandol or Tom G. Waters in the office of the Crandol Agency that the 1953 Pontiac had been acquired in the place of the 1949 Pontiac and that Archie McClinton there gave Crandol or Waters of the Crandol Agency a registration card which showed that the 1953 Pontiac was registered in the name of Archie McClinton and Mary McClinton and that Crandol or Waters had knowledge or should have had knowledge from such registration card that a request was then being made for a transfer or assignment of the ownership of the insurance policy from Melvin Ruth to the new owners of the car, that is, Archie McClinton and Mary McClinton; and that said Crandol or Waters, acting as reasonable and prudent persons, were then under a duty to inquire further as to said proposed transfer of the insurance policy but failed to do so. If you believe these facts and further believe that the acts of said Crandol or Waters resulted in a waiver of the rights of the insurance company or estoppel to assert said rights, then you may find for the plaintiff."

▇ We think that the District Court fell into error, however, when, after the jury's disagreement, it took a different view and directed a verdict for the defendant. The fact that the case is a close one and that, as the Court said, one jury having failed to agree, "to try this case over again would probably bring the same result * * * a hung jury," can, in our opinion, furnish no justification for dislodging the jury from its rightful role as the trier of the facts.

The judgment must be reversed and a new trial awarded.

Reversed.