COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

VIRGINIA DEPARTMENT OF
 SOCIAL SERVICES

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1447-17-1                      JUDGE ROSSIE D. ALSTON, JR.
                                                    JUNE 12, 2018
ERICA BETTS


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

Michelle A. L'Hommedieu, Assistant Attorney General (Mark R.
Herring, Attorney General; Cynthia V. Bailey, Deputy Attorney
General; Kim F. Piner, Senior Assistant Attorney
General/Section Chief, on brief), for appellant.

No brief or argument for appellee.


The Commonwealth of Virginia ("the Commonwealth") appeals the decision of the

Circuit Court of the City of Norfolk ("circuit court"), which held that the Virginia Department of

Social Services ("DSS") improperly rendered a finding of level three abuse against Erica Betts

("appellee").

BACKGROUND

This case concerns an altercation that occurred on March 26, 2015 between appellee, a

teacher in the Norfolk school system for the past eight years, and a student named M.C.

Appellee worked as a special education teacher at Norview Middle School in Norfolk, and M.C.

is one of her students.  On the date of the incident, M.C. was in appellee's classroom and had

been actively disrupting the class for almost 25 minutes, repeatedly talking and cursing despite

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

multiple warnings from appellee and her teaching assistant to stop. Appellee asked M.C. numerous times to improve his behavior, and he responded with various disrespectful and belligerent retorts to appellee, including "[y]ou're a beast" and "shut the fuck up." M.C. then put his head down on his desk, but soon disrupted class again by repeatedly kicking a chair next to him. Appellee asked M.C. to leave the classroom, but he refused. At this point M.C. called appellee a "fat bitch," and began another stream of cursing before walking in the direction of the classroom door. Appellee positioned herself near the door and told M.C. to come toward her and leave. M.C. walked over to appellee and then moved his hand toward her face. The guest teacher in the classroom, Dara Bergmann-Wexler, told CPS that M.C. "turned and tried to grab [appellee's] face or smash [appellee's] head or something." Multiple students stated that M.C. had made contact with appellee's face, and others stated that M.C. raised his hand toward appellee's face and said "talk to the hand." Appellee pushed M.C.'s hand back toward him because she did not want him to make contact with her.

M.C. further escalated the confrontation and eventually a physical altercation between appellee and M.C. ensued. Appellee grabbed M.C.'s hand, wrist, and arm and attempted to move him toward the classroom door and out into the hallway. Appellee stated that she grabbed M.C.'s hand and arm when M.C. became physically confrontational and tried holding M.C. to the door. Appellee further stated that at this point she was trying to get M.C. on the floor and did not restrain him; but was trying to support him.

Bergmann-Wexler stated that appellee was "standing to let him pass. The doorway will accommodate two people" and "she was standing sideways for him to go out." Bergmann-Wexler stated that she never witnessed appellee do anything to incite or provoke M.C.

While appellee attempted to move M.C. out of the classroom, he aggressively resisted, so appellee attempted to get him down onto the floor, wrapping her legs around his legs to restrain him and lay him down.[1]  M.C. became so physically antagonistic that he and appellee were thrashing around the hallway and bumped into the lockers on the wall.  Soon thereafter, other teachers arrived.  One stated that M.C. and appellee were in a "Frankenstein position," meaning they were facing each other with their arms straight out and locked together.  Several individuals stepped in to separate M.C. and appellee, and it took three people to pull M.C. away from appellee.  Only that portion of the encounter that occurred in the hallway was captured on video from a hallway camera.  The entire altercation lasted approximately 30 seconds.

Prior to the incident with appellee, M.C. had been involved in a separate altercation with another student after using derogatory and demeaning language.  As a result of that fight, M.C. sustained multiple injuries – he had a severely swollen black eye, scratches on his neck and around his face, and scratches on his arms.  Although M.C. reported that he suffered scratches on his wrists, arms, and ribs due to appellee's actions, the DSS investigator did not observe any injuries to corroborate that statement.

Shana Purvis-Stoker, another teacher at the school, testified that appellee is "awesome with the kids."  Purvis-Stoker stated that M.C. only appears in class around half of the time, usually arrives late, often puts his head on his desk, and constantly uses inappropriate language.  Multiple teachers stated that they overheard M.C. boasting about hitting appellee in the face and getting her fired.

---

[1] Appellee stated that she has used this same technique in the past to deal with aggressive and unruly students, and another teacher at the school testified that they are all trained to use this particular technique to restrain students who approach them in a violent manner.  This training highlights the unfortunate reality that too many teachers are confronted on a day-to-day basis with extremely difficult and defiant youths and are often placed in very difficult situations.

Sonya Russell is a reading teacher at the school and knows M.C. from the English class she teaches. She described M.C. as a very disrespectful and volatile student who never cared about school, and was medicated for his problems. She stated that M.C. boasted to her that he had gotten appellee fired but he never spoke about any injuries from the altercation. Russell testified that all teachers are trained to hold or restrain a violent child who approaches them in a violent way.

Following the initial investigation by DSS, Chermera Smith, the investigator assigned to the case, concluded that appellee had committed level three abuse and had engaged in willful misconduct, demonstrated by the scratches on M.C.'s body, and the video footage of the encounter purportedly establishing that appellee was the aggressor. Notably, however, Smith never reviewed M.C.'s disciplinary record, which contained five different disciplinary actions between September 2014 and March 2015. Nor did Smith review the medical reports stemming from M.C.'s fight with another student, which had occurred two weeks prior to his encounter with appellee, and from which all independent witnesses testified M.C. had sustained the scratches and bruises on his arms, and his black eye.

Appellee appealed DSS' finding of level three abuse, and the case proceeded to an administrative hearing. On review of the DSS investigation, an administrative hearing officer considered the testimony of the witnesses and ruled that "[n]either M.C.'s behavior as caught on camera nor his classroom behavior as described in the record and testimony warrants the totality of appellee's response." The hearing officer further wrote that:

> Regarding [M.C.]'s injuries, the evidence showed that [his] eye was injured prior to the incident with [appellee], [and] . . . no documentation of an injury to [M.C.] aside from his own statements. [Appellee, however,] is a full-grown woman [and M.C.] is a slight 15 year old. [M.C.] could very easily have been bruised after being repeatedly slammed into the lockers or having his neck grabbed. [DSS'] Level 3 finding is therefore appropriate.

Appellee then appealed to the circuit court, asserting that the hearing officer erred by basing her ruling on a finding that M.C. "could have been injured." Following the submission of briefs and oral argument by counsel, the circuit court ruled "a determination of level three abuse cannot rest on the creation of a risk of injury." Having ruled that the level three abuse finding was not supported under "creation of a risk of injury" and that no evidence existed to prove an "actual injury," the circuit court then considered whether appellee's conduct fell under the "threatens to create injury" clause of Code § 63.2-100. The circuit court applied Wolf v. Fauquier County Board of Supervisors, 555 F.3d 311 (4th Cir. 2009), and determined that Wolf established that "threaten" as used within Code § 63.2-100 refers only to a verbal or spoken threat. Thus, because appellee had never made a verbal or spoken threat, the circuit court ruled that the "threaten" clause had no application either. The circuit court remanded the case back to DSS "for further proceedings to determine whether [appellee] in fact injured [M.C.]."

The Commonwealth appealed the circuit court's ruling to this Court.

ANALYSIS

A. Jurisdiction

As a preliminary matter, we find it necessary to address whether this Court has jurisdiction to consider this appeal, given that the circuit court, in its capacity as an appellate court, remanded this case back to the administrative hearing officer "for further proceedings to determine whether [appellee] in fact injured [M.C.]." The critical concern is that the circuit court's order may not be "final" because it potentially left an issue unresolved. We find that we do have jurisdiction, both under the relevant statute and because the Commonwealth abandoned the issue on appeal to this Court.

This Court is a judicial body of limited jurisdiction, thus "[w]e have no jurisdiction over appeals except that granted us by statute." Polumbo v. Polumbo, 13 Va. App. 306, 307, 411

S.E.2d 229, 229 (1991). Code § 17.1-405 controls our jurisdiction over appeals of a "final decision" from administrative agencies.[2] "The question of whether a particular order is a final judgment is a question of law that we review *de novo*." Carrithers v. Harrah, 60 Va. App. 69, 73, 723 S.E.2d 638, 639 (2012). "A final order is one that disposes of the whole subject, gives all the relief contemplated, and leaves nothing to be done in the cause save to superintend ministerially compliance with the order." Alexander v. Morgan, 19 Va. App. 538, 540, 452 S.E.2d 370, 371 (1995). "If an order leaves any 'vital questions unsettled' in the matter, it may not be considered final." Commonwealth v. Lancaster, 45 Va. App. 723, 731, 613 S.E.2d 828, 831 (2005) (quoting Allen v. Parkey, 154 Va. 739, 748, 149 S.E. 615, 619 (1930)).

In Commonwealth v. Lancaster, real estate agents Jamie and Christina Lancaster appealed an unfavorable decision of the Real Estate Board to the local circuit court, which acted in its capacity as an appellate court, affirming two of the claims and remanding another for the Lancasters "to present their side of the case" at a "full hearing." Id. at 725, 728, 613 S.E.2d at 829, 830. On appeal to this Court, we held that "the order remanding the case to the Board for further consideration is interlocutory and . . . is not a 'final decision' with[in] the meaning of Code § 17.1-405." Id. at 730, 613 S.E.2d at 831. The Court reasoned that by remanding one of the claims back to the Board, "[t]he [circuit court] made no determination of the merits of that issue and made no ruling," thus "there [was] no 'final decision' within the meaning of Code § 17.1-405 that we can affirm or reverse." Id. at 731, 734, 613 S.E.2d at 832, 833.

---

[2] The language of the statute is not at issue in this case, so we only include it here for convenient reference. Code § 17.1-405 provides, in relevant part:

> Any aggrieved party may appeal to the Court of Appeals from . . .
> [a]ny final decision of a circuit court on appeal from . . . a decision
> of an administrative agency.

At first glance it may appear that Lancaster directly controls this case because the circuit court remanded the "actual injury" issue back to the administrative hearing officer, potentially leaving that issue unresolved and rendering the order unappealable. Lancaster is instructive but is distinguishable. The circuit court in Lancaster determined that the aggrieved parties had never actually had an opportunity to fully litigate one of their claims. Id. at 725, 613 S.E.2d at 830. Here, however, all parties involved in the proceedings presented their evidence to the administrative hearing officer, and during the first appeal to the circuit court, the circuit court issued a decision on the merits – specifically, the circuit court ruled that the evidence was insufficient to support a finding of "actual injury" to M.C. The circuit court then deemed it proper to afford the Commonwealth an additional opportunity to develop evidence,[3] as opposed to the circuit court in Lancaster, which determined that the Real Estate Board had not afforded due process to the litigants. Id. at 725, 613 S.E.2d at 830.

Moreover, the procedural posture of this case does not resemble other cases in which the Court held that a circuit court's order was not appealable under Code § 17.1-405. See Mina v. Mina, 45 Va. App. 215, 217, 609 S.E.2d 622, 624 (2005) (holding that an order was not final when a trial court reserved its ruling on an attorneys' fees request); Mattaponi Indian Tribe v. Va. Marine Res. Comm'n, 43 Va. App. 728, 729-30, 601 S.E.2d 686, 687 (2004) (holding that an order denying a motion to intervene was not final because it did not dispose of the whole subject matter of the case); Green v. Keil Plumbing & Heating, Inc., 42 Va. App. 539, 546, 593 S.E.2d 525, 528 (2004) (holding that discovery orders were not appealable when no sanctions were ordered and the underlying benefits award had not yet been adjudicated either).

---

[3] The record is not clear as to why the circuit court found it proper to remand the case back to the administrative hearing officer for "further proceedings" when the parties already had the opportunity to present their evidence and received a ruling on the merits. However, we need not reach that issue here because the Commonwealth abandoned its argument on "actual injury" in its appeal to this Court. See infra n.4.

Finally, the Commonwealth appealed this matter to this Court but does not ask that we affirm or reverse anything regarding the "actual injury" issue. In its brief, the Commonwealth argues that appellee's conduct is covered by the *other* clauses of the statute maintaining that:

> [T]here are different situations that inflict abuse or neglect upon a child and *it is not the Commonwealth's policy to require actual injury* . . . [t]he [circuit court's] interpretation is contrary to Virginia law and to the Commonwealth's policy of protecting children *before actual injury is incurred*.

(Emphasis added).

Thus, the Commonwealth asserts that appellee's conduct is still subsumed within the ambit of Code § 63.2-100, even in the absence of an "actual injury." Through these assertions, we conclude that the Commonwealth has abandoned argument on the "actual injury" theory of culpability. Accordingly, we need not address it.

### B. Statutory Language

"[T]he interpretation of statutes presents a pure question of law subject to *de novo* review by this Court." Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003) (citing Cain v. Rea, 159 Va. 446, 450, 166 S.E. 478, 479 (1932)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citing Campbell v. Harmon, 271 Va. 590, 597-98, 628 S.E.2d 308, 311-12 (2006)).

Code § 63.2-100 provides, in relevant part, that an "abused or neglected child" is one:

> Whose parents or other person responsible for his care *creates or inflicts, threatens to create or inflict* . . . a physical or mental injury by other than accidental means, or *creates a substantial risk* of death, disfigurement, or impairment of bodily or mental functions.

(Emphasis added).

In this case, the hearing officer determined that the evidence supported a finding of "level three abuse," which is defined as "those injuries/conditions, real or threatened, that result in minimal harm to a child." 22 V.A.C. 40-700-20.

After considering the evidence, the hearing officer wrote:

> Regarding [M.C.]'s injuries, the evidence showed that [his] eye was injured prior to the incident with [appellee], [and] . . . no documentation of an injury to M.C. aside from his own statements. [Appellee, however,] is a full-grown woman and [M.C.] is a slight 15 year old. [M.C.] *could very easily have been bruised* after being repeatedly slammed into the lockers or having his neck grabbed. The Agency's Level 3 finding is therefore appropriate.

(Emphasis added).

The hearing officer thus based her finding on the probability that appellee's actions of repeatedly shoving M.C. into the lockers *could have* resulted in bruising and abrasions on M.C.'s body.

On direct appeal of the hearing officer's decision, the circuit court ruled that the evidence did not support a finding in the context of a level three abuse determination because the evidence only established that appellee created a *risk* of bruising and abrasions yet failed to establish the predicate injuries necessary for a level three finding. The circuit court recognized that under Code § 63.2-100, "[t]he *creation of a risk* of injury only qualifies as abuse *when the risk is one of 'death, disfigurement, or impairment of bodily or mental functions.'* Level three abuse, however, only involves 'injuries/conditions, real or threatened, that result in *minimal harm.*'" (Emphasis added). The circuit court concluded that the "substantial risk" clause of Code § 63.2-100 did not support a finding of level three abuse.

The Court agrees that appellee's conduct did not constitute a "substantial risk of death, disfigurement, or impairment of bodily or mental function." As we stated above, the Commonwealth argues that appellee is still liable even in the absence of an "actual injury."

Since the statute also includes the threat of an injury, we now address whether appellee's actions fall within the "threatens to create or inflict" clause of the statute.

  i.  The circuit court erred in relying on Wolf v. Fauquier County Board of Supervisors.

The circuit court concluded that the "threaten" clause of Code § 63.2-100 cannot be applied to appellee's conduct pursuant to Wolf v. Fauquier County Board of Supervisors. See 555 F.3d 311. The Commonwealth contends that Wolf is completely inapplicable to this case, asserting that Wolf did not engage in any discussion of the legal meaning of "threaten" and "in no way ruled, discussed, or contemplated that the only type of 'threat' under the statute could be verbal." In this analysis, we agree with the Commonwealth.

Wolf did involve a verbal threat from a parent to kill his child, and the Fourth Circuit found that the conduct unquestionably fell within the scope of Code § 63.2-100. However, the Wolf court did not venture to analyze any other potential applications of the term. The word "threaten" only appears within the opinion twice – the first is within the factual background section, and the second when the Fourth Circuit wrote "[a] child whose parent has threatened to kill the child qualifies under the statute as an 'abused or neglected child.'"

The crux of the issue in Wolf did not involve determining the meaning of "threaten" but rather the circumstances under which mandatory reporters are obliged to report allegations. See Wolf, 555 F.3d at 324 ("[T]he Commonwealth of Virginia in designing its child abuse reporting scheme and its social services apparatus decided the costs of an occasional mistaken report were far less than the costs of lasting harm to the lives and safety of young children."). For those reasons, we hold that the circuit court erred in relying on Wolf for the proposition that "threaten," as it appears in Code § 63.2-100, only refers to a verbal or spoken threat.

ii. Appellee's conduct does not fall within the "threaten" clause of the statute.

According to our plain language interpretation, the term "threat" has multiple, commonplace meanings. A "threat" can come in the form of a verbal statement intended to convey ill-will from one individual to another. Because this case does not involve a verbal statement, that classification is inapplicable. However, "threat" can also be used in the abstract, i.e., "John is a threat to Jim." In that usage, the connotation conveyed is the prospective possibility of harm or ill-will between individuals, or even entities – "cyber-terrorism is a threat to computer network security."

The Commonwealth contends that the "threaten" clause applies to appellee's conduct in this case, relying on Jenkins v. Winchester Department of Social Services, 12 Va. App. 1178, 409 S.E.2d 16 (1991), for the principle that "threatens to create or inflict injury" has been applied despite the absence of a verbal threat. Jenkins was a termination of parental rights proceeding under Code § 16.1-283(B) and not a Code § 63.2-100 proceeding, but the same definition for "abused or neglected child" applies. Id. at 1182-83, 409 S.E.2d at 19.

Jenkins involved the removal of two children from their mother's custody based upon overwhelming evidence of malnutrition, lack of clothing, lack of adequate housing, and emotional abuse. Id. at 1180, 409 S.E.2d at 18. The Court determined that the trial court in Jenkins did not err in terminating the mother's parental rights because "her limited abilities [made] it such that it [was] impossible for her to adequately support, nurture and raise children," establishing that she caused/she herself was "a serious and substantial *threat* to [the children's] life, health or development." Id. at 1184, 409 S.E.2d at 20 (emphasis added); see also Anonymous C v. Anonymous B, 2011 Va. App. LEXIS 14, at *53 (Va. Ct. App. Jan. 11, 2011) ("[A]ll that is required under the statute is the *creation of an environment* that threatens to inflict

- 11 -

physical or mental injury." (emphasis added) (citing <u>Jackson v. W.</u>, 14 Va. App. 391, 397, 419 S.E.2d 385, 388 (1992)).

However, the particular connotation of "threat" within <u>Jenkins</u> does not encompass appellee's conduct. The Court's usage of the term "threat" in <u>Jenkins</u> referred to a likelihood of prospective harm and suffering via an unsafe environment created by the mother's past and probable future conduct, thus implicating the more abstract definition of "threat" that the Court referenced above. See <u>Jenkins</u>, 12 Va. App. at 1184, 409 S.E.2d at 20. Here, appellee's defensive responses to M.C.'s actions lasted less than a minute as she simply attempted to restrain M.C. as a consequence of his provocative behavior. No evidence was presented to support the conclusion that appellee constitutes a future harm to M.C. or any other student, nor that an "environment" exists in which prospective physical injuries to M.C. or any other student are likely to occur. To be sure, the environment which was created here was that fostered and cultivated by the inflammatory, confrontational, and offensive actions of M.C.

"While in the construction of statutes[,] the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature." <u>Chase v. DaimlerChrysler Corp.</u>, 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003) (citations omitted). The Commonwealth's argument rests upon the proposition that "threatens to create or inflict injury" encompasses scenarios, like this case, in which an "actual injury" cannot be proven but it can be suggested that an injury *probably* or *must have* occurred. The Court is not persuaded that the General Assembly intended for the language "threatens to create or inflict injury" to apply when there is no evidence that an "actual injury" exists or when vague allegations and mere suggestions of prohibited conduct are claimed yet are not proven by the applicable evidentiary standard.

For these reasons, in our *de novo* review of Code § 63.2-100, the Court holds that the Commonwealth did not present adequate proof of abuse within the meaning of the statute.

Therefore, the finding of level three abuse rendered by DSS and upheld by the hearing officer is vacated, as is the portion of the circuit court's order remanding this case. We reverse the circuit court in regard to its reliance on <u>Wolf</u>, but affirm its conclusion that "a determination of level three abuse cannot rest on the creation of a risk of injury."[4]

<u>Affirmed in part, reversed in part, and vacated in part.</u>

---

[4] To be clear, a remand is not necessary here because in its appeal to this Court, the Commonwealth abandoned its argument pertaining to the "actual injury" clause of the statute. That issue is thus conceded and a remand back to the administrative hearing officer would have no purpose. As the Court has explained above, the remainder of the statute also has no application, leaving nothing further for adjudication in this case.