UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Causey and White
Argued at Alexandria, Virginia


R.E. DEMARR PROPERTY
  MANAGEMENT, LLC, ET AL.
                                        MEMORANDUM OPINION[*] BY
v.      Record No. 1455-24-4           JUDGE DORIS HENDERSON CAUSEY
                                              DECEMBER 16, 2025
EDWIN JACOBSEN


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Roy R. Shannon, Jr. (Marc E. Pasekoff; Shannon Peak; Shannon &
Wright LLP, on briefs), for appellants.

Thomas K. Plofchan, Jr. (Jacqueline A. Kramer; Westlake Legal
Group, PLLC, on brief), for appellee.


Appellants R.E. DeMarr Property Management, LLC, Robert DeMarr, and Lisa DeMarr

(collectively, the DeMarrs) appeal the circuit court's judgment denying their motion for

reconsideration after the court granted the quiet title on real property (herein Lot 21) to appellee

Edwin Jacobsen. The DeMarrs contend that the circuit court supplanted the LLC Act,[1]

erroneously focused only on the parties' operating agreement, and incorrectly allowed Jacobsen

to claim an interest in Lot 21 although he was judicially estopped from doing so. Finding no

error, we affirm the circuit court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The "LLC Act" refers to the Virginia Limited Liability Company Act, Code
§ 13.1-1000 et seq.

BACKGROUND

Since 2003, Robert and Lisa DeMarr co-owned Mercure, LLC with Edwin Jacobsen. Mercure was governed by an operating agreement, wherein Jacobsen owned a 50% membership interest and Robert and Lisa DeMarr collectively co-owned the other 50% membership interest.[2] The operating agreement contains terms that governed what would happen to Mercure in the event of a bankruptcy filing by either Jacobsen or Robert and Lisa DeMarr, under a section titled "Termination or Dissolution." ("The Company shall be terminated in the event any Member . . . files a petition or answer seeking for himself any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law or regulation"). Article V, Section 5.5 of the operating agreement requires that operating managers[3] unanimously consent to any "contracts of sale." Article X, Section 10.4(A) contemplates the distribution of Mercure's assets following termination: "any Member entitled to any interest in such assets shall receive such interest therein as a tenant-in-common with all other Members so entitled."

After the execution of its operating agreement, Mercure acquired a piece of property in Dulles, Virginia referred to as Lot 21. Mercure then obtained a loan secured by a personal guaranty from both Jacobsen and Robert and Lisa DeMarr.

Jacobsen filed for bankruptcy in October 2012. Weeks later, in November 2012, the DeMarrs transferred ownership of Lot 21 to a separate company, appellant R.E. DeMarr Property Management, without Jacobsen's consent. Jacobsen did not learn about the transfer to R.E. DeMarr

---

[2] Jacobsen was also the registered agent of Mercure.

[3] Pursuant to Article I, Section 1.1(F), "'Operating Managers' shall mean the Member or Members selected by the Members at a meeting of Members duly called and held for such purpose to serve as Operating Manager or Operating Managers of the Company." Jacobsen testified that he was an operating manager of Mercure. Robert and Lisa DeMarr signed the deed conveying Lot 21 from Mercure to R.E. DeMarr Property Management as operating managers of Mercure.

Property Management until 2021. Jacobsen's bankruptcy action was dismissed in late 2012 due to his failure to comply with that court's order. He refiled in 2013. During the 2013 action, Jacobsen failed to disclose his ownership interests in either Lot 21 or Mercure. Upon his own motion, the bankruptcy court dismissed Jacobsen's case with prejudice in December of 2013.

Mercure failed to pay its licensing fee to the Commonwealth in December 2013. In 2015, Jacobsen emailed Robert and Lisa DeMarr, asking for an update about his $185,000 investment in Lot 21. The parties did not further address the status of Mercure or Jacobsen's ownership at that time.

In 2021, Jacobsen filed for quiet title on Lot 21. After a three-day bench trial, in August 2024, the circuit court found that Jacobsen's October 2012 bankruptcy filing terminated Mercure pursuant to the terms of the operating agreement. The circuit court also held that Mercure was dissolved by operation of law in December of 2013 when the LLC failed to pay its licensing fee to the Commonwealth. Moreover, the circuit court said that a decision by the LLC would have required approval by all members pursuant to the Mercure operating agreement. Because Jacobsen never formally separated from Mercure, and did not agree to the transfer of Lot 21 to R.E. DeMarr Property Management, the circuit court found that the transfer was unauthorized. Lastly, the circuit court decided that there was no proof of judicial estoppel because the 2013 bankruptcy filing occurred after the unauthorized transfer of Lot 21. Ultimately, the circuit court granted quiet title to the "entities determined by the operation of law" upon the termination of Mercure (pursuant to the "Termination or Dissolution" provisions) and invalidated the deed transferring Lot 21 to Robert and Lisa DeMarr's other business.

The circuit court denied the DeMarrs' subsequent motion for reconsideration. The DeMarrs appealed, asserting that the operating agreement allowed for a majority of members to agree to a transfer of property. They also argued that Jacobsen was estopped from claiming an interest

because of his inconsistent statements made during the 2013 bankruptcy filing and the 2021 quiet title action.

ANALYSIS

*I. Standard of review*

The judgment of the circuit court will only be set aside if "it appears from the evidence that such judgment is plainly wrong or without evidence to support it." *Callison v. Glick*, 297 Va. 275, 287 (2019) (quoting Code § 8.01-680). Factual findings are reviewed in the light most favorable to the prevailing party below, Jacobsen. *Id.*

The circuit court's application of law to facts is reviewed de novo. *Chamberlain v. Marshall Auto & Truck Ctr.*, 293 Va. 238, 242 (2017). Like contract law, the appellate court's interpretation of an operating agreement presents a question of law subject to de novo review. *Sch. Bd. of Newport News v. Commonwealth*, 279 Va. 460, 467 (2010). De novo review also applies to the interpretation of statutory definitions and their plain meanings. *Sarafin v. Commonwealth*, 288 Va. 320, 324 (2014); *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015). Additionally, interpretations of Rules 5A:18 and 5A:20 requires de novo review as questions of law. *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (5A:18); *Jay v. Commonwealth*, 275 Va. 510, 517 (2008) (5A:20).

An abuse of discretion standard applies to the issue of judicial estoppel. *Bentley Funding Group, LLC v. SK&R Group, LLC*, 269 Va. 315, 323-24 (2005) (noting that "judicial estoppel is an equitable doctrine, 'invoked in the discretion of the [trial] court'" (alteration in original) (quoting *King v. Herbert J. Thomas Mem. Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998))).

*II. The circuit court did not err by rejecting the DeMarrs' argument that Jacobsen's membership rights were restricted by his dissociation from Mercure.*

The DeMarrs first contend that the circuit court was plainly wrong in finding that Mercure was terminated when Jacobsen first filed for bankruptcy in 2012. Specifically, the

DeMarrs argue that the operating agreement is silent on the issue of "dissociation" because the operating agreement instead uses the word "termination," leaving the default provision found in Section 13.1-1040.1(6)(a) of the LLC Act to govern. *See* Code § 13.1-1040.1(6)(a). We disagree with this analysis.

Generally, operating agreements control the governance of an LLC, as they are bargained for agreements between LLC members. *See* Code § 13.1-1040.1. The General Assembly has provided a default provision, known as the LLC Act, in the event that an operating agreement does not exist or is otherwise silent on the issue in contention. Under the LLC Act, "[e]xcept as otherwise provided in the articles of organization or an operating agreement, a member is dissociated from a limited liability company upon the occurrence of . . . [t]he member's [b]ecoming a debtor in bankruptcy." Code § 13.1-1040.1(6)(a).

Courts only turn to the LLC Act if the operating agreement does not reach the question before them. *See id.* Operating agreements are interpreted similarly to contracts. *Ott v. Monroe*, 282 Va. 403, 407 (2011) ("When [the agreement's] terms are clear and unambiguous, we give them their plain meaning. We harmonize its provisions and give effect to each of them when it reasonably can be done."); *see, e.g.*, *Remora Invs., L.L.C. v. Orr*, 277 Va. 316, 324 (2009).

Here, the operating agreement explicitly instructs the parties upon the occurrence of Jacobsen's bankruptcy filing and thus controls. We agree with the DeMarrs' reading of Section (6)(a) that dissociation is triggered when a member files for bankruptcy. *See* Code § 13.1-1040.1(6)(a). But the LLC Act is a default provision. Section 13.1-1040.1(6)(a) only applies when the parties fail to agree to—or otherwise fail to memorialize in the operating agreement—the mechanisms required when a member files for bankruptcy. While Mercure's operating agreement does not expressly use the word "dissociation," it does discuss what occurs when a member files for bankruptcy: the LLC terminates. ("The Company shall be terminated in

the event any Member . . . files a petition or answer seeking for himself any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law or regulation").[4]  Because the agreement already contemplates the action to be taken in the event of a member pursuing bankruptcy, there is no need to employ Section (6)(A)'s default provisions.  The circuit court was thus not plainly wrong in finding that Mercure was terminated when Jacobsen first filed for bankruptcy in 2012.[5]

Because the deed transferring Lot 21 to R.E. DeMarr Property Management was executed in November 2012—a month after the LLC was terminated—the circuit court was also correct in finding that the transfer of Lot 21 to R.E. DeMarr Property Management, without Jacobsen's

---

[4] Furthermore, Virginia courts have upheld many operating agreements that use the word "termination" instead of "dissociation."  *See, e.g.*, *Gowin v. Granite Depot, LLC*, 272 Va. 246, 256-57 (2006); *Agnew v. United Leasing Corp.*, 80 Va. App. 612, 628-29 (2024) (interchanging language from the LLC Act and the Virginia Stock Corporation Act, Code § 13.1-754, which uses the word "termination" instead of "dissociation").

[5] Jacobsen argues that—because the DeMarrs did not discuss dissociation until their motion for reconsideration—they did not meet the requirements of 5A:18.  The purpose of Rule 5A:18 is to give the circuit court "an opportunity to rule intelligently on the issues presented." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).  However, this Court, hearing this issue en banc, made clear that a motion for reconsideration, partnered with clear objections and informal mentions of the arguments during trial, is enough to support an appeal. *Lee v. Lee*, 12 Va. App. 512, 515-16 (1991) (en banc).  The DeMarrs included in their motion for reconsideration that Jacobsen's bankruptcy resulted in his dissociation.  And, at the DeMarrs' request, the circuit court took judicial notice of the LLC Act's rules on dissociation. *See* Code § 13.1-1040.1.

Jacobsen further argues that the DeMarrs failed to assign error to the circuit court's failure to rule on the dissociation issue, citing *Findlay v. Commonwealth*, 287 Va. 111, 115 (2014) (noting the need for specificity in identifying where in the record there were errors committed by the trial court).  Rule 5A:20(c)(2) states that "[a]n assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . , or which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient."  Under Rule 5A:20, the assignments of error must "mirror[]" or otherwise "encompass[]" the specific objections made and ruled upon by the circuit court. *Commonwealth v. Carolino*, 303 Va. 399, 412 (2024).  Jacobsen's argument is without merit.  The DeMarrs included the dissociation issue explicitly in their assignment of error and specified the issues, using subheadings, on which the circuit court failed to rule.  Therefore, the assignment of error does in fact "encompass[]" the specific objections made and ruled upon by the circuit court. *Id.*

consent, was a violation of Article V, Section 5.5 of the operating agreement, which required that the operating managers unanimously consent to any "contracts of sale." Viewing the facts in a light more favorable to Jacobsen as the prevailing party below, the circuit court was therefore not plainly wrong in holding that the deed was executed in an ultra vires act.

The DeMarrs further contend that that the circuit court failed to properly assign ownership of Lot 21 when it said that "the rightful legal owner of the subject Lot 21 are the entities determined by the operation of law to be such." The DeMarrs first raised the issue of the judge's "operation of law" ruling in their opening brief on appeal. Nowhere in their motion for reconsideration did they address this ruling. Instead, it was Jacobsen whose objection to the final order stated, "Seen & objected to for the failure to delineate the owners as Ed Jacobsen as to 50% ownership as tenant in common with Robert DeMarr and Lisa DeMarr, husband & wife, tenants by the entireties as to the remaining 50%." Jacobsen did not assign cross-error. Therefore, this argument appears to be waived under Rule 5A:18. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . .").

To the extent that the DeMarrs did not waive this assignment of error, the Mercure operating agreement, under Article X, Section 10.4(A), contemplates the distribution of Mercure's assets following termination: "any Member entitled to any interest in such assets shall receive such interest therein as a tenant-in-common with all other Members so entitled." The circuit court merely noted the need to abide by this provision of the operating agreement when resolving disputes between the parties. The circuit court's application of law to these facts—that the entities by law who are entitled to the assets of a terminated LLC are its only two members, Jacobsen and the DeMarrs—was not erroneous. Therefore, the circuit court's final judgment was not plainly wrong, as the facts clearly support such an outcome here.

*III. The circuit court did not err by rejecting the DeMarrs' judicial estoppel defense.*

As a defense to their invalid transfer of Lot 21, the DeMarrs contend that the circuit court erred in finding that the appellants failed to prove judicial estoppel because Jacobsen made inconsistent statements regarding his ownership of Lot 21. Specifically, the DeMarrs argue that, because Jacobsen neglected to list Lot 21 as one of his assets in his 2013 bankruptcy filings, he is estopped from now arguing that he owns an interest in the property. We disagree.

Judicial estoppel "forbids parties from 'assum[ing] successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory.'" *Lofton Ridge, LLC v. Norfolk S. Ry. Co.*, 268 Va. 377, 380-81 (2004) (alteration in original) (citation omitted). To establish judicial estoppel, a party must show by clear and unequivocal evidence that the inconsistent position was one of fact, that a judgment was rendered when the statement was first asserted, that the position is presently inconsistent, that the parties and questions are the same, that the party claiming estoppel was misled and subsequently changed their position, and that it would be unjust to one party to allow the other to change its position. *Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 278 Va. 444, 462 (2009); *Richfood, Inc. v. Ragsdale*, 26 Va. App. 21, 24 n.2 (1997) (citing 28 Am. Jur. 2d *Estoppel and Waiver* § 70 (1966)). *See also Brown v. Lawson Transp. Corp.*, 7 Va. App. 679, 681-82 (1989) (citing *Cain v. Rea*, 159 Va. 446, 460 (1932)); *Bentley Funding Group*, 269 Va. at 327 ("Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001))). Virginia law does not require a showing of prejudice as a "prerequisite" of judicial estoppel. *Va. Elec. & Power Co.*, 278 Va. at 465.

Jacobsen—the party sought to be estopped—has adopted a position in the quiet title litigation (that he does own Lot 21) that is inconsistent with a stance (failure to claim Lot 21 as an asset) taken in prior litigation (his bankruptcy proceeding). However, the DeMarrs have shown no evidence to indicate that the bankruptcy court relied on those inconsistent statements. Jacobsen dismissed the lawsuit before the bankruptcy court was able to come to a decision regarding his assets—meaning there was no judicial reliance on the position asserted. *Compare Bentley Funding Group*, 269 Va. at 328 (finding that the prior court, a bankruptcy court, "placed no reliance on the absence of the [disputed property] as an asset of Bentley's bankruptcy estate"). Nor did Jacobsen's failure to list his ownership of Lot 21 in his bankruptcy filings directly result in reliance by the DeMarrs, a change in their position, or injustice to them. The 2013 bankruptcy filings came *after* the invalid transfer of Lot 21 to R.E. DeMarr Property Management. Therefore, the DeMarrs failed to show that the circuit court abused its discretion by rejecting the appellants' judicial estoppel defense.

> *IV. The circuit court did not err in finding that Jacobsen proved the necessary elements for a quiet title action.*

Lastly, as a second defense to their invalid transfer of Lot 21, the DeMarrs argue that Jacobsen had unclean hands because he did not disclose his ownership of Lot 21 in his bankruptcy filings. We reject this argument.

The equitable doctrine of unclean hands "does not demand that its suitors shall have led blameless lives." *Richards v. Musselman*, 221 Va. 181, 186 (1980) (quoting *Loughran v. Loughran*, 292 U.S. 216, 229 (1934)). As a result, to tailor our analysis, we must consider only misconduct that is directly related to the current litigation. *Id.* ("It is not sufficient that the wrongdoing is remotely or indirectly connected with the subject of the suit." (quoting *Bond v. Crawford*, 193 Va. 437, 447 (1952))).

The circuit court ruled that whatever misconduct Jacobsen might have engaged in was not done with respect to the deeding of Lot 21 from Mercure to R.E. DeMarr Property Management, which is the subject matter of the current litigation. The bankruptcy proceedings only applied to the current litigation insofar as the DeMarrs used them as evidence to support their affirmative defenses. Given *Musselman*, the circuit court did not err to the extent necessary to be plainly wrong upon review.

## CONCLUSION

We find that the circuit court did not err in granting quiet title of Lot 21 to appellee Jacobsen, and we affirm the circuit court's judgment.

*Affirmed.*